[971 NE2d 353, 948 NYS2d 223]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v LAMARR REID, Respondent.

Argued May 1, 2012; decided June 5, 2012

## POINTS OF COUNSEL

*P. David Soares, District Attorney*, Albany (*Steven M. Sharp* of counsel), for appellant. I. A defendant can open the door to otherwise inadmissible evidence barred by the Confrontation Clause. (*Bruton v United States*, 391 US 123; *People v Safian*, 46 NY2d 181; *Richardson v Marsh*, 481 US 200; *Crawford v Washington*, 541 US 36; *Beech Aircraft Corp. v Rainey*, 488 US 153; *Tennessee v Street*, 471 US 409; *United States v Francois*, 295 F Supp 2d 60; *People v Gladden*, 298 AD2d 462; *People v Wilson*, 297 AD2d 607; *Lee v McCaughtry*, 892 F2d 1318.) II. Defendant opened the door to rebutting testimony and County Court properly exercised its discretion when it allowed the trial prosecutor to make an inquiry to counter the incomplete and misleading information elicited by defendant. (*People v Hicks*, 35 AD3d 1027; *People v Fiore*, 12 NY2d 188; *People v Mateo*, 2 NY3d 383; *People v Rojas*, 97 NY2d 32; *People v Melendez*, 55 NY2d 445; *United States v Cruz-Diaz*, 550 F3d 169; *People v Buchanan*, 145 NY 1; *People v Massie*, 2 NY3d 179.) III. Even assuming Agent Marc Maurino's testimony was admitted in violation of defendant's right of confrontation, in view of the evidence of defendant's guilt, the error was harmless. (*People v Eastman*, 85 NY2d 265; *People v Douglas*, 4 NY3d 777; *People v Crimmins*, 36 NY2d 230; *People v Goldstein*, 6 NY3d 119; *People v Rawlins*, 10 NY3d 136.)

*Bruce Evans Knoll*, Albany, for respondent. I. The Appellate Division correctly determined that the reversal of Lamarr Reid's conviction was the proper remedy after his 6th Amendment right of confrontation was violated when a witness was

asked and responded to a question by the prosecutor by referencing an eyewitness to the crime and the only eyewitness to the crime was the codefendant who was precluded from testifying pursuant to *Bruton v United States* (391 US 123 [1968]) and *Crawford v Washington* (541 US 36 [2004]). (*People v Nesbitt*, 77 AD3d 854, 15 NY3d 954; *People v Fairweather*, 69 AD3d 876; *People v Rawlins*, 10 NY3d 136; *People v Melendez*, 55 NY2d 445; *People v Hardy*, 4 NY3d 192; *People v Berry*, 49 AD3d 888; *People v Johnson*, 7 AD3d 732; *People v Eisenberg*, 22 NY2d 99; *People v McNerney*, 6 AD3d 1107, 3 NY3d 678; *People v Pugh*, 236 AD2d 810, 89 NY2d 1099.) II. The conviction was not supported by legally sufficient evidence. (*People v Bleakley*, 69 NY2d 490; *People v Peele*, 73 AD3d 1219; *People v Joseph*, 68 AD3d 1534, 14 NY3d 889; *People v Stroman*, 83 AD2d 370; *People v Cohen*, 223 NY 406; *People v Garafolo*, 44 AD2d 86.) III. The Appellate Division erred in not finding that the integrity of the grand jury was impaired by the actions of the prosecutor. (*Schmerber v California*, 384 US 757; *People v Goldston*, 6 AD3d 736; *People v Hunt*, 18 AD3d 891; *People v Huston*, 88 NY2d 400; *People v Moffitt*, 20 AD3d 687, 5 NY3d 854.) IV. County Court erred in its *Sandoval* ruling. (*People v Briggs*, 166 AD2d 210; *People v Bradley*, 99 AD2d 513.) V. County Court erred both in its *Molineux* ruling and in allowing the People to violate and go beyond the scope of the ruling. (*People v Blair*, 90 NY2d 1003; *People v Hudy*, 73 NY2d 40; *People v Alvino*, 71 NY2d 233; *People v Molineux*, 168 NY 264; *People v Vails*, 43 NY2d 364; *People v Williams*, 28 AD3d 1005; *People v Faccio*, 33 AD3d 1041; *People v Washington*, 9 AD3d 499, 3 NY3d 682; *People v Oliver*, 19 AD3d 512, 5 NY3d 808; *People v Reynolds*, 283 AD2d 771, 96 NY2d 866.) VI. The Appellate Division erred in upholding admission of the letters appellant wrote to Latasha Joseph and/or to his brother, Kie Washington. VII. County Court was biased or gave the appearance of bias through its actions towards defense counsel. (*People v Yut Wai Tom*, 53 NY2d 44; *People v Prado*, 1 AD3d 533, 4 NY3d 725.) VIII. Prosecutorial errors deprived appellant of a fair trial. (*Bruton v United States*, 391 US 123; *Crawford v Washington*, 541 US 36; *People v Crimmins*, 36 NY2d 230.) IX. Appellant received ineffective assistance of counsel. (*People v Benevento*, 91 NY2d 708; *People v Baldi*, 54 NY2d 137; *People v Rivera*, 71 NY2d 705; *People v Droz*, 39 NY2d 457.)

**OPINION OF THE COURT**

Pigott, J.

This appeal raises the question whether a defendant can open the door to the admission of testimony that would otherwise be

inadmissible under the Confrontation Clause of the United States Constitution. We hold that he can, and, in this case, he did.

On June 8, 2001, a man was shot dead at the door of an Albany apartment where marijuana was being sold. Neighborhood residents saw two young men running away from the area. Four rifle casings were found at the murder scene—ammunition that is used in an AK-47 assault rifle. Four years later, in 2005, a friend with whom the victim had been watching television on the night of the murder identified Shahkene Joseph as a suspect, telling the police that Joseph had bought marijuana from the apartment shortly before the shooting. After further investigation, Joseph and defendant Lamarr Reid were arrested, and charged with murder in the second degree.

Joseph confessed to his involvement in the killing. He admitted that he and Reid had intended to rob residents of the apartment, that he saw the victim standing in the doorway, and that he and Reid fired their weapons through the door. In response to an omnibus motion by Reid, County Court severed Reid's and Joseph's trials, citing *Bruton v United States* (391 US 123 [1968]).

During Reid's trial, the jury heard evidence concerning the events on the night of the killing—that Joseph visited the apartment before the killing, asking to buy marijuana; that Joseph and Reid gave a rifle or shotgun to a person who had once been in the same street gang as Reid; and that Reid told this person that he had "caught a jux" and "[c]aught a vic," meaning that he had robbed someone. Two neighborhood residents testified that they had seen "two young men running with hooded sweat shirts" a block away from the crime scene.

The jury also heard that the day after the murder Reid told another acquaintance that "[h]e had caught a body" the previous night, i.e., that he had killed someone. Reid told this acquaintance that he had intended to carry out a robbery but met with resistance, that he had shot through the door or through the crack of the door, and that he had been with Shahkene Joseph and Charles McFarland. Reid said he had used a weapon he called the "Chopper," which the jury learned was the name given to a particular AK-47 rifle used by Reid's gang.

During cross-examination of this acquaintance, defense counsel had the witness confirm that McFarland himself had

been present at this conversation. Defense counsel elicited that the witness had told the police about McFarland, and then asked him, "But you are aware that Charles McFarland has never been arrested for this, right? . . . Only Lamarr Reid and Shahkene Joseph, right?"—to which the witness assented.*

Reid himself testified, and the defense also called a detective and a federal agent involved in the investigation. During direct examination of the detective, defense counsel asked questions designed to suggest that the investigation had been inadequate, a theme first outlined in counsel's opening statement. On direct examination of the federal agent, defense counsel asked whether he had received information, during the course of his investigation, that McFarland was involved in the shooting. The agent agreed he had, and questioning followed concerning the source of that information, during which defense counsel suggested that there was more than one source.

On cross-examination of the agent, the prosecutor elicited that the information that McFarland had been present at the murder was from Reid's acquaintance "saying what he had heard, not what he had seen or anything." The prosecutor then said to the agent, "But in fact you also received eye witness testimony about who exactly was at the murder didn't you?" The agent responded in the affirmative. The prosecutor then added, "And that eye witness testimony was that Charles McFarland certainly wasn't there; isn't that true?" Again, the agent assented.

Defense counsel objected, arguing that no eyewitness had testified to seeing the men who had carried out the shooting and that the jury would infer that Shahkene Joseph was the eyewitness who had told the police "who exactly was at the murder." County Court overruled the objection, reasoning, inter alia, that defense counsel had "opened the door about McFarland being there."

The prosecutor introduced letters that Reid had written from prison. Most pertinently, the letters alluded to Joseph, whom Reid was trying to contact. They also contained a reference to "catch[ing] bodies," words similar to the expression Reid had been heard to use to describe the June 8, 2001 killing.

---

* The jury was also told that Reid and a friend had been walking past the site of the murder some two years later when Reid told the friend "to get off the sidewalk, have some respect for the dead." Reid explained that he had tried to rob someone there and ended up shooting the man.

During summation, defense counsel returned to the theme that the police investigation had been inadequate and generated insufficient evidence. The jury was unpersuaded, finding Reid guilty of murder in the second degree (Penal Law § 125.25 [1]).

Reid filed a motion under CPL 330.30 seeking to set the verdict aside on several grounds, including the admission of testimony concerning an eyewitness to the crime who did not testify. County Court denied the motion, and Reid, duly convicted, was sentenced to imprisonment for 25 years to life.

Defendant appealed, raising a number of issues. The Appellate Division reversed County Court's judgment and ordered a new trial, holding that Reid's constitutional right to confront witnesses had been violated. "Because Joseph was unavailable and his pretrial statement to the police regarding who was present at the murder scene was testimonial, admission of that statement violated defendant's right to confront his accusers" (82 AD3d 1495, 1497-1498 [3d Dept 2011], citing *Crawford v Washington*, 541 US 36, 53-54 [2004]; *People v Rawlins*, 10 NY3d 136, 147-148 [2008]). The Appellate Division rejected the People's contention that defendant had opened the door to the prosecutor's questions, and concluded that the error identified was not harmless (82 AD3d at 1498).

The Appellate Division also addressed some, but not all, of Reid's remaining challenges to his conviction, ruling that "the introduction to the grand jury of some improper evidence did not require dismissal of the indictment" (*id.* at 1496), that Reid's conviction was supported by legally sufficient evidence and not against the weight of the evidence (*id.* at 1496-1497), and that County Court properly admitted the letters written by Reid from prison (*id.* at 1497).

A Judge of this Court granted the People leave to appeal. We now reverse.

As the People concede, the admission of the testimony that a nontestifying eyewitness told the police who had been present at the murder violated the Confrontation Clause, unless the door was opened to that testimony by the defense counsel's questioning of witnesses. The question then becomes whether a defendant can open the door to testimony that would otherwise violate his Confrontation Clause rights. Several United States Courts of Appeals have held that "a defendant can open the door to the admission of evidence otherwise barred by the Confrontation Clause" (*United States v Lopez-Medina*, 596 F3d

716, 733 [10th Cir 2010]; *see also e.g. United States v Holmes*, 620 F3d 836, 843-844 [8th Cir 2010]; *United States v Cruz-Diaz*, 550 F3d 169, 178 [1st Cir 2008]; *United States v Acosta*, 475 F3d 677, 683-684 [5th Cir 2007]; *but see United States v Cromer*, 389 F3d 662, 679 [6th Cir 2004]). We agree with this consensus.

If evidence barred under the Confrontation Clause were inadmissible irrespective of a defendant's actions at trial, then a defendant could attempt to delude a jury "by selectively revealing only those details of a testimonial statement that are potentially helpful to the defense, while concealing from the jury other details that would tend to explain the portions introduced and place them in context" (*People v Ko*, 15 AD3d 173, 174 [1st Dept 2005]). A defendant could do so with the secure knowledge that the concealed parts would not be admissible under the Confrontation Clause. To avoid such unfairness and to preserve the truth-seeking goals of our courts (*see Tennessee v Street*, 471 US 409, 415 [1985]), we hold that the admission of testimony that violates the Confrontation Clause may be proper if the defendant opened the door to its admission.

Today's holding is consistent with our precedent that statements taken in violation of *Miranda v Arizona* (384 US 436 [1966]) are admissible if a defendant opens the door by presenting conflicting testimony. Just as "[t]he shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances" (*Harris v New York*, 401 US 222, 226 [1971]), so the Confrontation Clause cannot be used to prevent the introduction of testimony that would explain otherwise misleading out-of-court statements introduced by the defendant.

This does not complete our inquiry, however. Whether a defendant opened the door to particular, otherwise inadmissible evidence presented to the jury must be decided on a case-by-case basis. The inquiry is twofold—"whether, and to what extent, the evidence or argument said to open the door is incomplete and misleading, and what if any otherwise inadmissible evidence is reasonably necessary to correct the misleading impression" (*People v Massie*, 2 NY3d 179, 184 [2004]).

Here, by eliciting from witnesses that the police had information that McFarland was involved in the shooting, by suggesting that more than one source indicated that McFarland was at the

scene, and by persistently presenting the argument that the police investigation was incompetent, defendant opened the door to the admission of the testimonial evidence, from his nontestifying codefendant, that the police had information that McFarland was not at the shooting.

Moreover, we conclude that the specific, otherwise inadmissible evidence heard by the jury—that an eyewitness to the shooting, who knew exactly who was there, had told the police that McFarland was not present—was reasonably necessary to correct defense counsel's misleading questioning and argument. There is justification for the view that the prosecutor could most effectively prevent the jury from reaching the false conclusion that McFarland had been present at the murder by eliciting that a person with immediate knowledge of the situation—an eyewitness who knew exactly who was at the murder—had told the police McFarland was not there. We conclude that County Court acted within its discretion in permitting the testimony.

Finally, we agree with the Appellate Division that the integrity of the grand jury was not impaired, that Reid's letters were properly admitted, and that his conviction was supported by legally sufficient evidence. The Appellate Division should now consider the facts and issues raised by Reid that it declined to reach.

Accordingly, the order of the Appellate Division should be reversed and the case remitted to the Appellate Division for consideration of the facts and issues raised but not determined on the appeal to that court.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ, SMITH and JONES concur.

Order reversed, etc.