■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ISAAC K. STROMAN, Appellant. [964 NYS2d 766]—

Egan Jr., J. Appeal from a judgment of the County Court of Ulster County (Williams, J.), rendered December 10, 2010, upon a verdict convicting defendant of the crimes of criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree (two counts).

On August 18, 2009, and following a series of telephone calls initiated by a confidential informant (hereinafter CI), defendant pulled into the parking lot of a Hess Mart located in the Town of Lloyd, Ulster County, exited his SUV and climbed into the back seat of a vehicle that he mistakenly believed to be occupied by two familiar faces—the CI, who was sitting in the front passenger seat and to whom defendant had sold drugs in the past, and one of the CI's friends, who was sitting in the driver's seat and who previously had accompanied the CI on such occasions. Once in the vehicle, and despite the fact that his "spider senses" were now on alert, defendant gave the CI 100 packets of a substance that would later prove to be heroin, and the CI gave defendant $900 in prerecorded buy money. Upon returning to his SUV, defendant began counting the money and, noting that he had received only $100 bills as payment, again sensed that something was wrong.[1] Defendant's instincts proved to be accurate; although the passenger in the subject vehicle indeed was the CI, the driver was actually an undercover sheriff's deputy who bore a passing resemblance to the CI's friend. As the CI and undercover officer pulled out of the parking lot, defend-

---

1. As defendant subsequently would testify at the grand jury proceeding, "Dope fiends don't carry money like that."

ant was arrested by members of the take-down team and searched, whereupon the prerecorded buy money, together with a quantity of crack cocaine and marihuana, were recovered.

Following a jury trial, defendant, who took the stand and readily admitted to selling heroin to the CI on the day in question, was convicted of criminal sale of a controlled substance in the third degree and two counts of criminal possession of a controlled substance in the third degree. Defendant thereafter was sentenced, as a second felony offender, to concurrent terms of 15 years in prison followed by three years of postrelease supervision. This appeal ensued.

Defendant initially contends that the police lacked probable cause to arrest him and, therefore, the buy money, crack cocaine and marihuana recovered from him should have been suppressed. We do not agree. "Probable cause for an arrest exists when an officer has knowledge of facts and circumstances sufficient to support a reasonable belief that an offense has been or is being committed" (*People v Jenkins*, 90 AD3d 1326, 1327 [2011], *lv denied* 18 NY3d 958 [2012] [internal quotation marks and citations omitted]; *see People v Lovejoy*, 92 AD3d 1080, 1081 [2012]). Specifically, "[s]uch facts and circumstances must make it more probable than not that a crime has taken place and that the one arrested is its perpetrator" (*People v Parker*, 84 AD3d 1508, 1509 [2011], *lv denied* 18 NY3d 927 [2012] [internal quotation marks and citations omitted]). To that end, "[a]n arresting officer may rely on information obtained from a fellow officer so long as the police as a whole were in possession of information sufficient to constitute probable cause to make the arrest" (*People v Sudler*, 75 AD3d 901, 902 [2010], *lv denied* 15 NY3d 956 [2010] [internal quotation marks and citations omitted]; *see People v Perez*, 47 AD3d 1071, 1072 [2008]).

Here, the undercover officer testified that she was present when the CI placed two of the telephone calls made that day to set up the drug buy. Although the CI did not identify the seller by name and the undercover officer could not hear the seller's side of these conversations, a black male with long dreadlocks—dressed in a blue shirt and jeans and later identified as defendant—arrived in the parking lot shortly after the second telephone call was concluded. Upon entering the subject vehicle, at which point defendant was sitting within two feet of the undercover officer, defendant and the CI discussed price. The CI then handed defendant the prerecorded buy money and defendant, in turn, handed the CI what the undercover officer reasonably believed to be heroin packaged in small envelopes and tied together with black rubber bands. After defendant and the CI

discussed the possibility of another transaction, defendant exited the vehicle. The undercover officer then signaled—via the transmitting device that was hidden in the vehicle and being monitored by other law enforcement personnel—that the transaction was completed and provided a description of defendant and what he was wearing. When the take-down team moved in less than 30 seconds later, they observed defendant—the only black male in the vicinity matching the description provided by the undercover officer—walking in the parking lot and promptly arrested him, whereupon the prerecorded buy money and a quantity of crack cocaine and marihuana were recovered. Such proof, in our view, is more than sufficient to establish probable cause for defendant's arrest.

Defendant next takes issue with a supplemental report prepared by one of the detectives involved in the buy-bust operation, wherein the detective, who omits any reference to the CI and/or her role in the transaction, states that the drugs were purchased from defendant "utilizing an undercover police officer." According to defendant, such statement misled him as to the identity of the purchaser, thereby influencing his decision to reject a plea offer and impeding his ability to prepare a defense, and constituted false evidence against him. Again, we do not agree.

Assuming, without deciding, that the relevant report may be characterized as affirmatively misleading, the identity of the buyer is immaterial for purposes of defendant's conviction of criminal sale of a controlled substance in the third degree. "Quite simply, the corpus delicti of the crime charged was the transfer of a controlled substance; the person to whom that substance was transferred was immaterial to this conviction" (*People v Feldman*, 50 NY2d 500, 504 [1980] [citations omitted]). Additionally, as the challenged report was neither entered into evidence at trial nor used by the People to obtain defendant's conviction, the People did not proffer "false" evidence against defendant or otherwise violate their duty of fair dealing. Further, the record reflects that defendant (1) readily admitted—both before the grand jury and at trial—to selling drugs on the day in question,[2] (2) knew the identity of the individuals he believed to have been involved in the transaction (and in setting him up), and (3) was aware—well in advance of trial—of both

---

2. "This [was] a buy-bust sale. I was caught with marked money. . . . I did it."

the report's existence and the statements contained therein,[3] and defense counsel utilized the report to vigorously cross-examine its author at trial. Under these circumstances, it cannot be said that the report in any way impeded defendant's ability to prepare a defense. Finally, any claim that the subject report influenced defendant's decision to reject a plea is belied by the record, which reveals that defendant rejected plea offers in March 2010 and June 2010—long after his October 2009 grand jury testimony evidencing his awareness of the report and the statements contained therein.

Nor do we find merit to defendant's claim of ineffective assistance of counsel. Initially, to the extent that defendant contends that counsel failed to properly investigate his case or sufficiently confer with him prior to trial, such claims involve matters outside the record and, as such, are more properly the subject of a CPL article 440 motion (see People v Bahr, 96 AD3d 1165, 1166 [2012], lv denied 19 NY3d 1024 [2012]; People v Pendelton, 81 AD3d 1037, 1038-1039 [2011], lv denied 16 NY3d 898 [2011]). As to the balance of defendant's claim, although the trial strategy adopted could be considered novel,[4] the record reflects that counsel expressly advised defendant of the pitfalls associated therewith and otherwise gave cogent opening and closing statements, made appropriate objections, motions and requests to charge and extensively cross-examined the People's witnesses. Under these circumstances, we are satisfied that defendant received meaningful representation (see People v Buchanan, 95 AD3d 1433, 1437 [2012]; People v Fulwood, 86 AD3d 809, 811 [2011], lv denied 17 NY3d 952 [2011]). Defendant's remaining contentions, including his assertion that the sentence imposed was harsh and excessive, have been examined and found to be lacking in merit.

---

**3.** Indeed, defendant's avowed purpose in appearing before the grand jury was to challenge the underlying "paperwork" accusing him of selling drugs to an undercover officer, stating, "I never sold anything to an undercover officer. I sold [drugs] to a drug dealer and a dope fiend."

**4.** At trial, defendant was adamant that the two individuals present with him at the time of the underlying sale were the CI and her friend, the latter of whom he recognized from prior sales to the CI, and defendant repeatedly insisted that he never sold drugs to the undercover officer. In so doing, defendant apparently was attempting to persuade the jury either that the police were outright lying, i.e., the undercover officer was not actually present for the sale, or—at the very least—were attempting to improve the People's chance of obtaining a conviction by maintaining that the sale was made to the undercover officer, who—compared to the CI—arguably could be perceived as a more credible witness. While the viability of such a defense is debatable, the fact remains that, notwithstanding defendant's candid admissions at trial, the jury took nearly six hours to return a verdict, during which time it requested various read backs of the testimony and a portion of the jury charge.

Rose, J.P., Lahtinen and McCarthy, JJ., concur. Ordered that the judgment is affirmed.