### Supreme Court, Appellate Division
### Third Judicial Department

Decided and Entered:  December 3, 2015                    106525
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                    Respondent,

            v                              MEMORANDUM AND ORDER

PAUL J. TAYLOR,
                    Appellant.
_____


Calendar Date:  October 21, 2015

Before:  Lahtinen, J.P., Egan Jr., Lynch and Devine, JJ.

_____

        Paul J. Connolly, Delmar, for appellant.

        Kristy L. Sprague, District Attorney, Elizabethtown (James
E. Martineau Jr. of counsel), for respondent.

_____


Lahtinen, J.P.

        Appeal from a judgment of the County Court of Essex County
(Meyer, J.), rendered December 23, 2013, upon a verdict
convicting defendant of the crimes of murder in the second
degree, gang assault in the first degree and criminal possession
of a weapon in the third degree.

        In August 2012, defendant, together with Michael Rivers and
Scott Denno, allegedly caused the death of the victim, Robert
Rennie, by repeatedly and viciously kicking him as he lay on a
street in the Village of Keeseville, Essex County.  Defendant was
indicted on charges of murder in the second degree, gang assault
in the first degree and criminal possession of a weapon in the

third degree.  A jury convicted him on all three counts.[1]  He was sentenced, as a second felony offender, to concurrent prison terms of 25 years to life on the murder and gang assault convictions and, consecutive thereto, 3½ to 7 years for the criminal possession of a weapon conviction.  Defendant appeals.

Defendant initially argues that his murder conviction was not supported by legally sufficient evidence and was against the weight of the evidence.  When considering the legal sufficiency of the evidence, we view the evidence in the light most favorable to the People and evaluate whether "there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime charged" (People v Bleakley, 69 NY2d 490, 495 [1987] [citation omitted]; see People v Ramos, 19 NY3d 133, 136 [2012]).  In a weight of the evidence review, where, as here, a different conclusion would not have been unreasonable, we "must, like the trier of fact below, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (People v Romero, 7 NY3d 633, 643 [2006] [internal quotation marks and citations omitted]).  The focus of defendant's argument is that the evidence did not demonstrate that he intended to kill the victim.  "Because intent is an invisible operation of the mind, direct evidence is rarely available" (People v Rodriguez, 17 NY3d 486, 489 [2011] [internal quotation marks, brackets and citations omitted]) and, thus, "it may be inferred from a defendant's conduct and the surrounding circumstances" (People v Callicut, 101 AD3d 1256, 1258 [2012], lv denied 20 NY3d 1096 [2013] [internal quotation marks and citation omitted]).

Proof at trial included that defendant, Denno and Rivers believed that the victim had been physically assaulting Rivers' cousin, Samantha Lacroix.  Lacroix had an ongoing relationship

---

[1]  In separate trials, Rivers and Denno were each convicted of manslaughter in the first degree and gang assault in the first degree.

with the victim, she had also recently had a brief relationship with defendant, and defendant desired to continue his relationship with Lacroix. Defendant, Denno, Rivers and Rivers' wife – Angela Rivers – were in the vicinity of Lacroix's apartment when Rivers and Denno began a physical altercation with the victim. As Rivers and the victim started to fist fight, defendant reportedly attacked the victim from behind knocking him to the ground and defendant – knowing that he was wearing steel-toed boots – commenced kicking the victim. Rivers and Denno joined the kicking, although their kicks were described by Angela Rivers as being not as violent as defendant's. Eventually Rivers and Denno stopped kicking the victim, but defendant continued to kick the victim, disregarding the admonition of the others at the scene to stop, including a warning that he was going to kill the victim. Defendant repeatedly kicked the victim with such force that the victim's body would come off the ground. Defendant was about 6 feet 4 inches tall and weighed well over 200 pounds, whereas the victim was 5 feet 7 inches tall and weighed less than 120 pounds. Although the victim was able to leave the immediate area when the attack ceased, he quickly succumbed to his injuries and died. Following the attack, defendant bragged about how hard he had kicked the victim with his steel-toed boots, and he told Lacroix later that night that she would not have to worry about the victim knocking on her door anymore. Blood on defendant's boot was consistent with the victim's DNA.

The forensic pathologist who performed an autopsy on the victim described the victim's body as having what appeared to be a series of footwear impressions. He stated that the victim had a large quantity of blood – about a quarter of all his blood – in his abdominal cavity. The victim's many injuries included, among others, collapsed lungs, over 20 fractures of his ribs and a fractured thyroid cartilage in his neck. The various lacerations suffered by the victim included a five-inch tear of his liver. The pathologist opined that the victim's cause of death was internal hemorrhage and the collapse of both lungs due to multiple traumatic blunt force injuries. He stated that, without medical attention, both injuries could have independently caused the victim's death and that, while the victim could have walked a short distance after sustaining the injuries, he would not have survived for more than 15 minutes. Viewed most favorably to the

People, the evidence regarding the circumstances of the attack, the nature of defendant's repeated kicking of the incapacitated victim with steel-toed boots, and the severity of the injuries suffered by the victim provided sufficient grounds for the jury to infer that defendant intended to kill the victim (see People v Hill, 115 AD2d 239, 239 [1985], lv denied 67 NY2d 884 [1986]). Moreover, after viewing the evidence in a neutral light while deferring to the jury's credibility determinations, we are unpersuaded that the verdict was against the weight of the evidence.

Next, defendant asserts that Angela Rivers was permitted to improperly bolster her testimony. "The term 'bolstering' is used to describe the presentation in evidence of a prior consistent statement – that is, a statement that a testifying witness has previously made out of court that is in substance the same as his or her in-court testimony" and "such statements are generally excluded by the hearsay rule, unless a hearsay exception is applicable" (People v Smith, 22 NY3d 462, 465 [2013]; see People v Ludwig, 24 NY3d 221, 230 [2014]; People v Buie, 86 NY2d 501, 509-510 [1995]). Here, Angela Rivers gave three statements to police, two shortly after the incident in which she did not mention what happened to the victim and a third about a month later that included information about the victim. At trial, she acknowledged, without objection from defendant, that she had given the first two statements and that she had omitted in those statements information about the victim. The People then elicited that she had given a third statement, and she was asked whether she "put in there what happened to [the victim] on Mill Hill Road?" Over defendant's objection on the ground of bolstering, she answered simply, "Yes, I did." She did not testify about the content of her prior third statement. This limited response was not hearsay and did not constitute bolstering (see People v Hampton, 121 AD3d 1538, 1539 [2014], lv denied 24 NY3d 1084 [2014]). Nor was it bolstering to acknowledge – without providing information about what was said – that she had testified in the earlier trials of Denno and Rivers.

County Court did not err in permitting the People to cross-examine a State Police investigator, who was called by defendant as a witness, regarding certain statements made to the

investigator by Denno.  Although testimonial statements by a nontestifying witness are inadmissible as violative of the Confrontation Clause, "a defendant can open the door to the admission of evidence otherwise barred by the Confrontation Clause" (People v Reid, 19 NY3d 382, 387-388 [2012] [internal quotation marks and citation omitted]).  Denno, a witness to and participant in the crimes, gave three statements to the investigator, and Denno invoked his Fifth Amendment right not to testify at defendant's trial.  Defendant called the investigator as a witness to elicit information about Denno's second statement, which was favorable to defendant.  This opened the door for the People to cross-examine the investigator about the content of the two other Denno statements, which provided context and were less favorable to defendant.

We are unpersuaded by defendant's argument that it was reversible error for County Court to deny his challenge for cause to a prospective juror.  "When a prospective juror indicates that he or she may not be able to remain impartial in the event the defendant decides not to testify, the potential juror may be selected to serve only if the court elicits an unequivocal guarantee that he or she will follow the court's instructions regarding the law and render an impartial verdict" (People v Boddie, 126 AD3d 1129, 1131 [2015] [citations omitted]).  Defense counsel asked a prospective juror whether she "might take a negative inference" if defendant did not testify, and the juror responded: "I can't say that for sure, but I think I would question to myself why he wouldn't testify [on] his own behalf." County Court then stated to the prospective juror: "If you were instructed on what the law is, that the law is that you cannot make any unfavorable inference against him if he fails to testify or even if he does not put on any evidence at all, would you follow that law?"  The prospective juror stated: "I would have to."  This constituted an "unequivocal assurance" from the prospective juror that she would be "able to reach a verdict based entirely upon the court's instructions on the law" (People v Bludson, 97 NY2d 644, 646 [2001]; see People v Chambers, 97 NY2d 417, 419 [2002]).

Defendant contends that his arrest was unlawful in that the arresting officer lacked probable cause for the arrest and, thus,

County Court should have granted his motion to suppress evidence seized as a result of the arrest. "[E]ven if an arresting officer lacks personal knowledge sufficient to establish probable cause, the arrest will be lawful if the officer acts upon the direction of or as a result of communication with a superior or fellow officer or another police department provided that the police as a whole were in possession of information sufficient to constitute probable cause to make the arrest" (People v Ramirez-Portoreal, 88 NY2d 99, 113 [1996] [internal quotation marks, brackets and citations omitted]; see People v Stroman, 106 AD3d 1268, 1269 [2013], lv denied 21 NY3d 1046 [2013]).  As relevant here, the arresting officer, John Donohue, testified at the suppression hearing that, at the same time that he was interviewing defendant, other officers involved in the investigation were interviewing Lacroix.  Donohue received a phone call from one of the other officers informing him that Lacroix was in the process of giving a sworn statement that defendant had sexually assaulted her and, based upon such information, Donahue arrested defendant.  Although Donohue could not recall which officer had contacted him with the information, the evidence at the hearing sufficiently established that the information was relayed by a fellow officer who, in turn, obtained the information from a reliable means, i.e., a police interview of the person claiming to have been sexually assaulted by defendant (see e.g. People v Ketcham, 93 NY2d 416, 419-421 [1999]).

Finally, with regard to defendant's sentence, the People concede — and we agree — that defendant's sentence for criminal possession of a weapon was statutorily required to run concurrently with the other sentences under the circumstances (see Penal Law § 70.25 [2]; People v Ross, 34 AD3d 1124, 1126 [2006], lv denied 8 NY3d 884 [2007]).  Otherwise as to sentencing, defendant was properly sentenced as a second felony offender and, in light of his criminal record and the brutal nature of the crime, we find no abuse of discretion or extraordinary circumstances warranting a modification thereof (see e.g. People v Winchell, 129 AD3d 1309, 1313 [2015], lvs denied 26 NY3d 973 [2015]).

Egan Jr., Lynch and Devine, JJ., concur.

ORDERED that the judgment is modified, on the law, by directing that defendant's sentence for criminal possession of a weapon in the third degree shall run concurrently with the other sentences, and, as so modified, affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court