■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN IRBY, Appellant. [33 NYS3d 530]—

Egan Jr., J. Appeal from a judgment of the County Court of Sullivan County (LaBuda, J.), rendered April 3, 2014, upon a verdict convicting defendant of the crimes of reckless endangerment in the second degree, unlawful imprisonment in the first degree, assault in the third degree, reckless driving and endangering the welfare of a child (two counts) and the traffic infraction of failure to stop at a stop sign (three counts).

In June 2013, defendant, the victim and their two children were residing in the Village of Ravena, Albany County, and the victim was five months pregnant with their third child. On June 25, 2013, the victim, who was visiting her family in Swan Lake, Sullivan County, had a telephone conversation with defendant, who was in Albany County, at which time defendant expressed his desire that the victim and the children return home. When the victim indicated that she was not yet ready to return, defendant told her to come back or they were breaking up. The victim surmised that her refusal would trigger defendant's travel to Sullivan County and, at some point after 2:00 p.m. that day, defendant arrived at the place of business of the

---

victim's family—purportedly to take the victim and the children to get ice cream.

Shortly after the victim and the children got into the couple's vehicle and defendant drove away, an argument broke out, during the course of which defendant struck the victim, who was riding in the front passenger seat, in the face. As the argument escalated, the victim jumped out of the window of the moving vehicle and attempted to flee. Defendant stopped the car, ran after the victim, grabbed her and returned her to the vehicle, during the course of which the victim lost her shirt, bra and shoes. Defendant thereafter drove around the countryside—often at a high rate of speed and running various stop signs—until he was apprehended by law enforcement. Portions of this incident and the ensuing chase were witnessed by a bystander and certain members of the victim's family, the latter of whom had followed defendant's vehicle—fearing for the victim's safety.

As a result of this incident, defendant was charged in an 11-count indictment with reckless endangerment in the first degree, unlawful imprisonment in the first degree, assault in the third degree, reckless driving, endangering the welfare of a child (two counts) and failure to stop at a stop sign (five counts). Following a jury trial, defendant was found guilty of reckless endangerment in the second degree (as a lesser included offense), unlawful imprisonment in the first degree, assault in the third degree, reckless driving, endangering the welfare of a child (two counts) and failure to stop at a stop sign (three counts). Defendant was sentenced, as a second felony offender, to a prison term of 2 to 4 years upon his unlawful imprisonment conviction and received a conditional discharge as to the remaining offenses. This appeal ensued.

Defendant initially contends that his convictions of unlawful imprisonment in the first degree and assault in the third degree are against the weight of the evidence. We disagree. "A person is guilty of unlawful imprisonment in the first degree when he [or she] restrains another person under circumstances which expose the latter to a risk of serious physical injury" (Penal Law § 135.10). Insofar as is relevant here, the restraint element "means to restrict a person's movements intentionally and unlawfully in such manner as to interfere substantially with his [or her] liberty by moving him [or her] from one place to another, or by confining him [or her] either in the place where the restriction commences or in a place to which he [or she] has been moved, without consent and with knowledge that the restriction is unlawful" (Penal Law § 135.00 [1]; *see*

*People v Lotmore*, 276 AD2d 901, 901-902 [2000], *lv denied* 96 NY2d 736 [2001]). "[O]ne is deemed to have been moved 'without consent' when that movement is accomplished by, as relevant here, physical force or intimidation" (*People v Lotmore*, 276 AD2d at 902, quoting Penal Law § 135.00 [1]). As Penal Law § 135.10 makes clear, actual serious physical injury need not occur; rather, "[f]irst-degree unlawful imprisonment only requires that the circumstances expose the restrained person to a risk, of unspecified degree, of serious physical injury" (*People v Cespedes*, 122 AD3d 417, 418 [2014], *lv denied* 25 NY3d 1070 [2015] [internal quotation marks omitted]).

Here, the unlawful imprisonment count pertained to defendant's conduct following the victim's initial escape from the moving motor vehicle—specifically, defendant's actions in pursuing and grabbing the victim, forcing her back into the vehicle and thereafter traveling at a high rate of speed along an "unmarked road"—meaning that there were no fog lines or centerline markings—with "a lot of curves," "a lot of blind spots," "limited sight distance[s]" and a posted speed limit of 30 miles per hour, all the while passing through "an area with lots of homes and bungalow colonies." To that end, the People offered the testimony of a witness who was gardening near the intersection of Stanton Corners Road and Old White Lake Turnpike in the Town of Liberty, Sullivan County when she observed a car speeding down the road and the victim[1] "hanging out the window" screaming "help me." As the car "veered off" of the road, the victim "jumped out the window" and the witness yelled for the victim to run toward her. As the witness was placing a call to the police, she observed a man, whom she later identified as defendant, exit the vehicle, run toward the victim and "grab her," at which point he "dragged her back to the car." According to the witness, the victim "was screaming" at this time and, after the car "sped off," the witness observed the victim's sandals and some of her clothing lying in the road. This incident also was witnessed in part by the victim's brother, who testified that, when he caught up to defendant and the victim, he heard screaming, "saw them scuffling into the car" and observed defendant "throw[ ]" the victim into the vehicle. Once the vehicle—operated by defendant—left the scene, the victim's cousin, who had been following defendant's vehicle since it left Swan Lake, continued his pursuit, during the course of which he estimated that defendant's vehicle "was

---

1. The witness did not specifically identify the victim as the woman she observed on the day in question, but there is no dispute that they are one and the same.

going at least 80" miles per hour and observed defendant run several stop signs. This same witness testified that, when defendant attempted to negotiate a particular curve at approximately 60 miles per hour, "the rear corner of the car looked like it was lifting up."

In addition to the foregoing, the jury considered the testimony of the victim. On this point, there is no question that the victim was a reluctant witness and downplayed defendant's actions throughout the course of her testimony. That said, the victim nonetheless acknowledged that, after she jumped out of the moving vehicle, defendant ran after her and "grabbed [her] by [her] arms," at which point the victim "wiggled out" of her top, bra and flip flops in an effort to avoid having defendant touch her. As defendant "walked" the victim back to the vehicle, the victim testified that her arms "were up [her] back"—a maneuver subsequently acknowledged by the victim to be "a Nelson lock"[2] —and she conceded that she could not move. Although the victim could not recall precisely what defendant said to her after she was back inside the vehicle, she conceded that he "may have" told her "not to touch the f'ing door [again] or else he would kill" her. Finally, the victim denied that defendant was speeding at any point, contending instead that the nature of the roads were such that "it seems like you're flying, but you are really doing the speed limit."

While a different verdict would not have been unreasonable, "viewing the evidence in a neutral light and deferring to the jury's credibility assessments" (*People v Kocsis*, 137 AD3d 1476, 1479 [2016]), we are satisfied that the verdict convicting defendant of unlawful imprisonment in the first degree is in accord with the weight of the evidence (*cf. People v Cespedes*, 122 AD3d at 418). We reach a similar conclusion with regard to defendant's conviction of assault in the third degree. The victim admitted that defendant hit her in the face, and the intent required to sustain a conviction under Penal Law § 120.00 (1) "may be inferred from . . . defendant's conduct and from the surrounding circumstances" (*People v Knox*, 137 AD3d 1330, 1331 [2016] [internal quotation marks and citation omitted]; *see People v Taylor*, 134 AD3d 1165, 1166 [2015], *lv denied* 26 NY3d 1150 [2016]).

Defendant next contends that County Court erred in allowing a State Police investigator to testify as to an out-of-court statement made by the victim following defendant's apprehension. We disagree. The victim's statement to the investigator,

---

2. According to the victim, defendant just did this "[f]or a little bit" in order "to get [her] attention."

wherein she indicated—"in sum and substance"—that defendant "was going to kill [her]" and pleaded with the investigator not to leave her side, was not offered for the truth of the matter asserted but, rather, to provide background information and to explain why the investigator responded in the manner that he did (*see People v Coker*, 121 AD3d 1305, 1306 [2014], *lv denied* 26 NY3d 927 [2015]; *People v McCottery*, 90 AD3d 1323, 1325 [2011], *lv denied* 19 NY3d 975 [2012]). While a more detailed limiting instruction arguably could have been provided, County Court did advise the jury that such testimony was not being offered for its truth but, instead, to explain why "the investigator did whatever he did." To the extent that defendant now finds County Court's explanation to be inadequate, this issue is unpreserved for our review as defendant neither raised any objection in this regard nor requested that any additional instructions be provided (*see People v Tucker*, 291 AD2d 663, 665 [2002], *lv denied* 98 NY2d 703 [2002]). In any event, the victim had already testified on direct examination—without objection—that defendant had said that "[h]e was going to hurt [her]," she acknowledged that defendant threatened to kill her and she did not dispute that she "might" have told the State Police that defendant said, "[Y]ou're going to die today." Hence, we discern no error as to the admission of the investigator's testimony.

Defendant's remaining arguments do not warrant extended discussion. Although defendant contends that his conviction of unlawful imprisonment in the first degree should be reversed because it merged with his conviction of reckless endangerment in the second degree, this issue is unpreserved for our review due to defendant's failure to advance this argument before County Court (*see People v Hanley*, 20 NY3d 601, 606 [2013]; *People v Kruppenbacher*, 81 AD3d 1169, 1170 [2011], *lv denied* 17 NY3d 797 [2011]; *People v Ross*, 43 AD3d 567, 570-571 [2007], *lv denied* 9 NY3d 964 [2007]), and we decline defendant's invitation to exercise our interest of justice jurisdiction in this regard. Defendant further argues that County Court's admonitions to the jury at certain points during the trial were inadequate but, again, this issue is unpreserved in the absence of a timely objection (*see People v Edwards*, 69 AD3d 755, 755 [2010], *lv denied* 15 NY3d 749 [2010]; *People v Dashnaw*, 37 AD3d 860, 862 [2007], *lv denied* 8 NY3d 945 [2007]). In any event, "the record reveals that County Court's instructions adequately conveyed to the jury its function, duties, and conduct" (*People v Dashnaw*, 37 AD3d at 862 [internal quotation marks and citation omitted]). Accordingly, the judgment of conviction is affirmed.

McCarthy, J.P., Lynch, Devine and Mulvey, JJ., concur. Ordered that the judgment is affirmed.

