People v Delbrey (2020 NY Slip Op 00324)





People v Delbrey


2020 NY Slip Op 00324


Decided on January 16, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 16, 2020

108721

[*1]The People of the State of New York, Respondent,
v
Eduardo J. Delbrey, Appellant.

Calendar Date: November 18, 2019

Before: Garry, P.J., Lynch, Mulvey, Aarons and Colangelo, JJ.


Bruce Evans Knoll, Albany, for appellant.
J. Anthony Jordan, District Attorney, Fort Edward (Taylor Fitzsimmons of counsel), for respondent.



Garry, P.J.
Appeal from a judgment of the County Court of Washington County (McKeighan, J.), rendered March 11, 2016, upon a verdict convicting defendant of the crimes of burglary in the first degree (four counts), assault in the second degree, menacing in the second degree and criminal possession of a weapon in the second degree.
Defendant was charged with burglary in the first degree and other criminal offenses after he forced his way into the victim's apartment and hit the victim in the face with a handgun. Following a jury trial, he was convicted of burglary in the first degree (four counts), assault in the second degree, menacing in the second degree and criminal possession of a weapon in the second degree. County Court sentenced defendant as a second violent felony offender to concurrent prison terms of 25 years, followed by five years of postrelease supervision, on each burglary conviction and to lesser concurrent prison terms on the remaining convictions. Defendant appeals.
Defendant asserts that his convictions are not supported by legally sufficient evidence and are against the weight of the evidence because the testimony of the People's witnesses was so inconsistent, contradictory and illogical as to be incredible as a matter of law. As defendant failed to raise this specific claim in his motion for a trial order of dismissal, his legal sufficiency challenge is unpreserved for appellate review (see People v Werkheiser, 171 AD3d 1297, 1298 [2019], lv denied 33 NY3d 1109 [2019]; People v Van Alphen, 167 AD3d 1076, 1077 [2018], lv denied 32 NY3d 1210 [2019]). "However, a weight of the evidence challenge, which bears no preservation requirement, also requires consideration of the adequacy of the evidence as to each element of the crimes" (People v Cruz, 131 AD3d 724, 725 [2015] [citations omitted], lv denied 26 NY3d 1087 [2015]; accord People v Perillo, 144 AD3d 1399, 1400 [2016], lvs denied 29 NY3d 948, 951 [2017]).
The People's theory, as developed at trial, was that defendant confronted and assaulted the victim because he believed that the victim had stolen drugs or money from him. The testimony established that the victim and his then-fiancÉe (hereinafter the wife)[FN1] lived in a third-floor apartment in the Town of Hudson Falls, Washington County. Defendant lived in a second-floor apartment in the same building. The victim and the wife testified that, on the day of the incident, they returned to their apartment, accompanied by a friend, and found that the apartment had been ransacked. A few moments after they arrived, defendant entered the apartment, followed by two other men. The wife and the victim testified that defendant knocked and the victim opened the door, while the friend testified that defendant forced or "kicked" the door open. All three witnesses agreed that defendant entered without an invitation to do so and was not authorized to be in the apartment. Shouting that "he wanted his dope and his money," defendant struck the victim in the face with a pistol. The victim fell to the floor, sustaining injuries that included a fractured orbital bone and a facial laceration that required eight stitches.
The victim, the wife and the friend testified that defendant then held them at gunpoint. He allowed the friend to leave after one of the two men who had accompanied him urged him to do so. Defendant then ordered the victim "to leave and not come back." The victim departed, as did the two men who had accompanied defendant. The wife testified that she and defendant then conversed for a few minutes; she said that defendant was "really upset" about "stuff" that was missing from his apartment. After about five minutes, the wife and defendant realized that police officers were coming up the stairs toward the apartment. The wife testified that she was anxious about the gun's presence in the apartment because she was afraid that it would affect a plea agreement that she had recently reached arising from a drug-related offense. Before police arrived, she asked defendant, "Didn't you have a gun?" He showed her that he had hidden the gun underneath her mattress.
Police officers who responded to the scene testified that, before they reached the apartment, they encountered two men nearby. An officer detained and searched the men, finding no weapons, while a sergeant and another officer went to the apartment. The sergeant searched defendant and found about $3,000 on his person. The wife was reluctant to share information with the police in defendant's presence, but after the sergeant separated them, she told him where defendant had hidden the gun. The gun was found and photographed; it proved to be loaded, and it operated properly when it was test-fired. The officer stated that DNA swabs were taken from the gun but were never sent to the crime laboratory for testing.
A jail administrator testified that defendant made a telephone call from the jail that, like all such calls, was recorded and reviewed. In the recording, which was played for the jury, defendant said that "a lot of money" had been taken from his apartment and he stated, "All I did was defend myself. What you want me . . . let someone rob me? . . . I can't just empty my pockets and walk back home. It just don't work like that."
The victim, the wife and the friend each acknowledged during their direct testimony that they had substantial criminal records and histories of drug use. Defendant asserts that the trial testimony is unworthy of belief because of these factors, as well as inconsistencies and what defendant asserts are illogical assertions in the testimony. If the jury had accepted this argument, a different verdict would not have been unreasonable; thus, we must "weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Cole, 162 AD3d 1219, 1223 [2018] [internal quotation marks and citations omitted], lv denied 32 NY3d 1002 [2018]; accord People v McCoy, 169 AD3d 1260, 1261-1262 [2019], lv denied 33 NY3d 1033 [2019]). Most of the inconsistencies in the testimony involved relatively minor matters, such as how the victim and the wife spent the day before returning to the apartment or where the two men who accompanied defendant were when police found them, and thus "did not render [the testimony] inherently unbelievable or incredible as a matter of law" (People v Kelsey, 174 AD3d 962, 964 [2019] [internal quotation marks and citations omitted], lv denied 34 NY3d 982 [2019]; see People v Mamadou, 172 AD3d 1524, 1525 [2019], lv denied 33 NY3d 1106 [2019]). These discrepancies, the witnesses' backgrounds and defendant's claim that certain aspects of the witness accounts were irrational or improbable were "fully explored during cross-examination and, in the final analysis, posed credibility questions for the jury to resolve" (People v Nunes, 168 AD3d 1187, 1189 [2019] [internal quotation marks and citations omitted], lv denied 33 NY3d 979 [2019]).
Defendant makes a specific argument that his burglary convictions are not supported by the weight of the evidence, claiming that the People failed to prove the element of unlawful entry because the wife testified that defendant was standing on the "top stair" when he struck the victim and, thus, according to defendant, had not yet entered the apartment (see Penal Law § 140.30). However, the jury could reasonably have concluded from the testimony of the victim and the friend that defendant struck the victim as he stepped inside or immediately thereafter. In any case, it was undisputed that the victim was inside the apartment when defendant struck him; thus, defendant necessarily intruded into the space with, at minimum, the arm and hand that were holding the gun (see People v King, 61 NY2d 550, 555 [1984]; People v Prince, 51 AD3d 1052, 1053-1054 [2008], lv denied 10 NY3d 938 [2008]). Viewing the evidence in a neutral light and deferring to the jury's credibility determinations, we are satisfied that the verdict was supported by the weight of the evidence (see People v Saunders, 176 AD3d 1384, 1388 [2019]; People v Horton, 162 AD3d 1118, 1120 [2018]).
Defendant next challenges County Court's Sandoval ruling, which permitted the People to cross-examine defendant about five prior felony convictions between 1999 and 2006, but not about the nature of the crimes or the underlying facts. The ruling was made as a compromise between the People's assertion that each of the convictions bore on defendant's credibility and defendant's objections that there were too many crimes in total and they were too remote in time. The court adopted defendant's suggestion that the People should not be permitted to inquire about the nature or specifics of the underlying crimes, but rejected his argument that the People should not be permitted to specify the number of prior convictions. Defendant now asserts that he was prevented from testifying on his own behalf by the cumulative prejudicial effect of the large number of convictions and their remoteness in time. This contention is unpreserved, as defendant made no objection to the court's compromise ruling before the end of the Sandoval hearing (see People v Sansone, 163 AD3d 1271, 1272 [2018]; People v Nunez, 160 AD3d 1225, 1226 [2018]). If the issue had been properly presented, we would not have found an abuse of discretion.[FN2]
Defendant next raises several challenges to County Court's evidentiary rulings related to the vandalism of the apartment. Before trial, defendant moved to preclude the admission of evidence of the vandalism on the ground that it could render the indictment duplicitous by confusing the jury as to whether the burglary charges were based upon the vandalism rather than upon defendant's subsequent entry into the apartment and assault on the victim. County Court denied that motion, but granted defendant's request for a limiting instruction, using language crafted and agreed upon by defense counsel and the prosecutor.[FN3] Immediately after the wife described the vandalism during her direct testimony, and upon defendant's request, the court gave the agreed-upon instruction, advising the jury that the testimony was admitted solely as background information and was not to be considered for any other purpose. Defendant made no objection and did not object when County Court failed, as originally agreed, to repeat the limiting instruction at the close of trial. During the wife's testimony, the People submitted two photographs of the vandalized apartment; defendant stipulated to the admission of one of these photographs and did not object to the second. Thus, defendant's appellate objections to the admission of the photographs and the timing and content of the limiting instruction are unpreserved (see People v Irby, 140 AD3d 1319, 1323 [2016], lv denied 28 NY3d 931 [2016]; People v Sawyer, 23 AD3d 845, 847 [2005], lv denied 6 NY3d 852 [2006]).
We reject defendant's claim that the burglary counts in the superseding indictment were rendered duplicitous by the evidence of the vandalism. Where, as here, an indictment count charges only one criminal act on its face, the evidence at trial may nevertheless reveal that multiple criminal acts were committed during the pertinent time period, "making it virtually impossible to determine the particular act . . . as to which the [jury] reached its verdict" (People v Raymo, 19 AD3d 727, 729 [2005] [internal quotation marks, brackets and citation omitted], lv denied 5 NY3d 793 [2005]). Here, however, the testimony about the vandalism was distinct from the testimony about defendant's entry into the apartment and assault upon the victim, and it was clear that the events occurred at two separate times. The People's summation was focused solely upon defendant's entry into the apartment and assault upon the victim and did not mention the vandalism (see People v Gannon, 174 AD3d 1054, 1057 [2019], lv denied 34 NY3d 980 [2019]). Thus, the record reveals no confusion as to which events formed the basis for the verdict.
County Court did not err in permitting the wife to testify that, after everyone else had left the apartment, defendant told her that "he was sorry, that he was going to get someone over to help clean up the apartment, he was going to get [the wife] back her things." Defendant objected, arguing that the testimony should be stricken and a curative instruction given because the testimony, in effect, constituted an admission that defendant had committed the vandalism. The court denied defendant's request to strike the testimony, finding that the first two remarks did not necessarily refer to the vandalism, as defendant could have been apologizing for the assault on the victim and offering to clean up any "mess" that had been created during the assault. As for the testimony about giving back the wife's things, the court noted that there had not yet been any testimony about property being removed from the apartment by anyone and that it did not know whether testimony would be given that would "match up to the property being returned."[FN4] The court deferred ruling on that aspect of defendant's objection until all the testimony was in, advising that an additional curative instruction would be given if necessary. Defendant agreed, made no further objections, and did not request a ruling on the wife's remark or a curative instruction at the end of the testimony. Thus, to the extent that defendant now objects on that ground, the assertion is unpreserved (see People v Irby, 140 AD3d at 1323). As for the remainder of the wife's testimony about defendant's alleged statements, we agree with County Court that the remarks did not necessarily refer to the vandalism and find no error in their admission. We note that defense counsel elicited testimony from the wife during cross-examination to the effect that she did not know who had committed the vandalism. Additionally, the People did not refer to the wife's testimony about defendant's alleged apology during summation and, as previously noted, did not assert that defendant committed the vandalism.
Defendant's remaining objections to County Court's evidentiary rulings are unpreserved for appellate review (see generally People v Jackson, 160 AD3d 1125, 1128 [2018], lvs denied 31 NY3d 1149 [2018]). Likewise, defendant's assertion that the People committed Brady, Rosario or discovery violations by providing certain documents to him near the end of the trial is unpreserved (see People v Stacconi, 151 AD3d 1395, 1397 [2017]), and we decline his request to exercise our interest of justice jurisdiction.
Defendant next claims that he received the ineffective assistance of counsel from his first counsel, who represented him during pretrial proceedings, and also from the substitute counsel who represented him thereafter. His claims that his first counsel failed to visit or respond to his inquiries and failed to provide the People with a recantation letter allegedly written by the wife implicate matters outside the record and, thus, are more properly the subject of a CPL article 440 motion (see People v Horton, 173 AD3d 1338, 1341-1342 [2019], lv denied 34 NY3d 933 [2019]). The sole claimed error that can be examined on defendant's direct appeal is his claim that the omnibus motion filed by his first counsel on his behalf contained "boilerplate" provisions with typographical errors that, among other things, referenced a crime with which defendant was not charged. A single error of this nature does not ordinarily constitute ineffective assistance (People v Bush, 107 AD3d 1302, 1302 [2013]) and, viewed in its totality, "[t]he record that is before us" reveals that defendant received meaningful representation from his first counsel (People v Horton, 173 AD3d at 1342; see generally People v Baldi, 54 NY2d 137, 147 [1981]).
Defendant's claims that his substitute counsel failed to conduct a sufficient investigation and to procure the recantation letter allegedly written by the wife, like his similar claims against his first counsel, would better be addressed through a CPL article 440 motion (see People v Williams, 171 AD3d 1354, 1355 [2019]). As for his substitute counsel's failure to request an adjournment when a witness who had been subpoenaed to testify at trial did not appear, substitute counsel may have had strategic reasons for electing not to pursue the testimony of an apparently reluctant witness (see generally People v Seecoomar, 174 AD3d 1154, 1158 [2019], lv denied ___ NY3d ___ [Nov. 26, 2019]). Defendant's remaining objections to his representation are contradicted by the record or otherwise without merit. Our review of the record reveals that substitute counsel filed appropriate pretrial motions, conducted effective cross-examinations of the People's witnesses, pursued a cogent trial strategy and otherwise provided defendant with meaningful representation (see People v Breedlove, 157 AD3d 1050, 1052 [2018]).
Finally, defendant asserts that his sentence is harsh and excessive. Defendant's assertion that his sentence was imposed for retaliatory reasons is unpreserved and, "[i]n any event, the fact that a sentence imposed after trial is longer than one offered in plea negotiations does not establish vindictiveness where, as here, nothing else in the record supports defendant's claim" (People v Williams, 163 AD3d 1160, 1165 [2018], lvs denied 32 NY3d 1170, 1179 [2019]; see People v Zi He Wu, 161 AD3d 1396, 1397-1398 [2018], lv denied 32 NY3d 943 [2018]). In view of defendant's lengthy criminal history, lack of remorse and continued denial of responsibility, we find no abuse of discretion or extraordinary circumstances warranting modification of his sentence (see People v Kendall, 91 AD3d 1191, 1193 [2012]).
Lynch, Mulvey, Aarons and Colangelo, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: The victim and the wife were engaged at the time of the incident and were married by the time of defendant's trial.

Footnote 2: The nature of each of the prior convictions "[bore] logically and reasonably on the issue of credibility" (People v Smith, 18 NY3d 588, 593 [2012] [internal quotation marks and citation omitted]), and their remoteness in time did not preclude their admission, particularly as defendant was incarcerated for significant portions of the intervening time (see People v Lloyd, 118 AD3d 1117, 1122 [2014], lv denied 25 NY3d 951 [2015]).

Footnote 3: Contrary to defendant's assertions, County Court's ruling on this issue was not based on a Molineux analysis. The People's Molineux application sought to permit the admission of evidence that defendant possessed drugs and money that he believed the victim had stolen from his apartment. That application did not seek to admit evidence of the vandalism, and the People made no claim at any time that defendant committed it. Indeed, the prosecutor advised the People's witnesses not to testify on that issue. Defendant's separate motion in limine to preclude evidence of the vandalism was based solely upon his claim that the burglary charges would be rendered duplicitous; the court's ruling was based upon that argument.

Footnote 4: During a previous bench conference, the prosecutor described another potential explanation for defendant's alleged statement about returning the wife's property, explaining that the People's witnesses might testify that the two men who had accompanied defendant removed items from the apartment while defendant was holding the wife and the victim after the assault. The prosecutor had instructed the witnesses not to give such testimony, but argued that they should be permitted to do so. The People's witnesses did not ultimately make any such claims during their testimony.