■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL D. RIVERS, Appellant. [59 NYS3d 565]—

■■■■■■■■

Lynch, J. Appeal from a judgment of the County Court of Essex County (Meyer, J.), rendered April 4, 2014, upon a verdict convicting defendant of the crimes of manslaughter in the first degree and gang assault in the first degree.

In August 2012, defendant, together with Paul Taylor and Scott Denno, allegedly caused the death of the victim, Robert Rennie, by repeatedly and viciously kicking him as he lay on a street in the Village of Keeseville, Essex County.* Defendant was indicted on charges of manslaughter in the first degree, gang assault in the first degree and criminal possession of a weapon in the third degree, the latter of which County Court dismissed at the close of evidence pursuant to defendant's motion for a trial order of dismissal. A jury convicted him on the charges of manslaughter in the first degree and gang assault in the first degree. He was sentenced to prison terms of 25

---

**3.** "I don't even care. I don't have no remorse. Nobody have no remorse for my life."

* In a separate trial, Taylor was convicted of murder in the second degree, gang assault in the first degree and criminal possession of a weapon in the third degree and, upon appeal, we affirmed the judgment of conviction (*People v Taylor*, 134 AD3d 1165 [2015], *lv denied* 26 NY3d 1150 [2016]). In addition, following a trial, Denno was convicted of manslaughter in the first degree and gang assault in the first degree.

years on each conviction, to run concurrently. Defendant appeals.

Defendant initially argues that the convictions were not supported by legally sufficient evidence and were against the weight of the evidence. When considering the legal sufficiency of the evidence, we view the evidence in the light most favorable to the People and evaluate whether "there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime charged" (*People v Bleakley*, 69 NY2d 490, 495 [1987] [citation omitted]; *see People v Ramos*, 19 NY3d 133, 136 [2012]). In a weight of the evidence review, we must first determine whether a different conclusion would not have been unreasonable; if not, then, "like the trier of fact below, [we] weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (*People v Romero*, 7 NY3d 633, 643 [2006] [internal quotation marks and citations omitted]). A verdict will only be set aside if we conclude—with deference to the jury's credibility assessments—that "the trier of fact has failed to give the evidence the weight it should be accorded" (*id.* at 643-644 [internal quotation marks and citations omitted]).

The focus of defendant's argument is that the evidence did not demonstrate that he intended to cause serious physical injury to the victim or that he caused the victim's death. As relevant here, to support a conviction for manslaughter in the first degree, the People must offer evidence demonstrating that defendant, "[w]ith intent to cause serious physical injury to another person, . . . causes the death of such person" (Penal Law § 125.20 [1]). To support a conviction for gang assault in the first degree, the People must offer evidence demonstrating that defendant, "with intent to cause serious physical injury to another person and when aided by two or more other persons actually present, . . . causes serious physical injury to such person" (Penal Law § 120.07). At trial, the People argued that the elements of each crime could be satisfied either through defendant's own actions or, alternatively, as a consequence of acting in concert with Taylor and Denno. Under the latter acting in concert theory, "[i]nasmuch as the statute requires that the accomplice act with the mental culpability required for the commission of the underlying crime, an accomplice must have a shared intent, or community of purpose with the principal" (*People v Guerrero*, 150 AD3d 883, 884 [2017] [internal quota-

tion marks and citations omitted]; *see People v Scott*, 25 NY3d 1107, 1109-1110 [2015]). Moreover, "[b]ecause intent is an invisible operation of the mind, direct evidence is rarely available" (*People v Rodriguez*, 17 NY3d 486, 489 [2011] [internal quotation marks, brackets and citations omitted]) and, therefore, "it may be inferred from a defendant's conduct and the surrounding circumstances" (*People v Callicut*, 101 AD3d 1256, 1258 [2012] [internal quotation marks and citation omitted], *lv denied* 20 NY3d 1096 [2013]).

Proof at trial included that defendant, Taylor and Denno believed that the victim had been physically assaulting defendant's cousin, Samantha Lacroix, with whom the victim had an ongoing relationship. As a result of this and purported threats by the victim to burn down defendant's residence, defendant expressed that he wanted to "teach [the victim] a lesson." Defendant, Denno, Taylor and defendant's wife—Angela Rivers— were in the vicinity of Lacroix's apartment when defendant and Denno encountered the victim. According to Rivers' testimony, after defendant and Denno took hold of the victim's arms, the victim's demeanor was similar to "a child that didn't want to walk with his parent, kind of hanging back a little." Following a number of verbal insults, defendant and the victim attempted to strike one another. Soon thereafter, Taylor reportedly attacked the victim from behind, knocking him to the ground, and defendant, Denno and Taylor commenced kicking the victim, with defendant focusing on the victim's left "chest area." The kicking continued for "[m]aybe a minute, maybe less," where defendant and Denno kicked the victim the way "you would kick a kickball maybe, without running up on the ball," while Taylor would run up to and kick the victim "[l]ike he was punting a football for a field ball." Eventually, at the insistence of Rivers, defendant and Denno stopped kicking the victim, but Taylor continued to kick the victim. Rivers then urged Taylor to stop kicking and defendant attempted to briefly intervene by positioning himself in between the victim and Taylor and telling Taylor to stop, but Taylor pushed defendant aside. The attack ended soon thereafter when Taylor ceased kicking and the victim ran from the area. The victim's body was discovered the following morning along the side of a nearby road. Following the attack, defendant, Taylor and Denno returned to defendant's home and "bragge[d]" about the attack to defendant's son, and defendant "said something to the effect of, [w]e got him." Defendant's son noted that, a couple weeks prior to the attack, defendant had expressed on two occasions that he wanted to "beat [the victim] up," once in response to the victim's alleged threat to burn down defendant's residence.

When Rivers addressed the attack with defendant, he warned Rivers "[t]o keep [her] mouth shut." Blood on one of defendant's sneakers and pants were consistent with the victim's DNA.

The forensic pathologist who performed an autopsy on the victim described the victim's body as having bruising and abrasions consistent with footwear impressions. He stated that the victim, who was 5 feet 7 inches and weighed 118 pounds, had a large quantity of blood in his abdominal cavity and lungs. The victim's various injuries included, among others, collapsed lungs, over 20 rib fractures, a fractured cartilage in his neck and bruising and abrasions to his skin. The various lacerations suffered by the victim included a five-inch tear of his liver. At the time of the attack, the victim had a blood alcohol content three times the legal level for driving in New York. The pathologist opined that the victim's manner of death was a homicide and that the cause of death was internal hemorrhage and the collapse of both lungs due to multiple traumatic blunt force injuries. He stated that, without medical attention, both injuries could have independently caused the victim's death and that, while the victim could have walked a short distance after sustaining the injuries, he likely succumbed to his injuries within 15 minutes of the attack.

Viewed most favorably to the People, the evidence offered at trial was legally sufficient to establish that, by acting in concert with Taylor and Denno, defendant intended to cause serious physical injury to the victim and, thereafter, caused the victim's death, albeit defendant may not have delivered the most violent kicks (*see People v Scott*, 25 NY3d at 1110; *People v Keitt*, 141 AD3d 437, 437 [2016], *lv denied* 28 NY3d 1073 [2016]; *People v Martinez*, 30 AD3d 353, 353-354 [2006], *lv denied* 7 NY3d 868 [2006]). Moreover, although a different result would not have been unreasonable, after viewing the evidence in a neutral light and deferring to the jury's credibility assessments, we find that the weight of the evidence readily supports the manslaughter conviction (*see People v Hooks*, 148 AD3d 930, 931 [2017], *lv denied* 29 NY3d 1081 [June 7, 2017]; *People v Nafi*, 132 AD3d 1301, 1302-1303 [2015], *lv denied* 26 NY3d 1147 [2016]; *People v Chapman*, 30 AD3d 1000, 1001 [2006], *lv denied* 7 NY3d 811 [2006]). Similarly, as to defendant's gang assault conviction, we find that the evidence offered at trial was legally sufficient to establish that defendant, while aided by two persons present, acted in concert with these individuals in intending to cause—and in fact causing—serious physical injury to the victim, and that this conviction was not

against the weight of the evidence (*see People v Cordato*, 85 AD3d 1304, 1310 [2011], *lv denied* 17 NY3d 815 [2011]; *People v East*, 284 AD2d 962, 962 [2001], *lv denied* 97 NY2d 641 [2001]).

Defendant's remaining contentions do not warrant extended discussion. First, defendant argues that any statements he made during his arrest on October 5, 2012, which were surreptitiously recorded without his knowledge, should have been suppressed as in violation of his right to counsel. However, the contested statements do not appear to have been introduced at trial, where the record reflects that the only recordings introduced to the jury, upon stipulation, were three redacted statements from defendant's August 26, 2012 interview with the State Police, thus rendering further analysis of this argument academic.

Second, defendant contends that he was denied the effective assistance of counsel on the basis of a number of purported errors, including counsel's limited cross-examination of the forensic pathologist, counsel's failure to object to portions of Rivers' testimony and counsel's failure to defend against the manslaughter charge. However, "defendant's criticisms of counsel must amount to more than a simple disagreement with [counsel's] strategies, tactics or the scope of possible cross-examination" (*People v Ildefonso*, 150 AD3d 1388, 1388 [2017] [internal quotation marks and citation omitted]). Further, "[s]o long as the evidence, the law, and the circumstances of a particular case, viewed in totality . . . , reveal that the attorney provided meaningful representation, the constitutional requirement will be satisfied" (*People v Wynn*, 149 AD3d 1252, 1256 [2017] [internal quotation marks and citation omitted]). Our review of the record as a whole confirms that, notwithstanding the acrimonious relationship between defendant and counsel, counsel engaged in proper motion practice, pursued viable trial strategies of challenging the credibility of the only eyewitness and juxtaposing defendant's actions against those of Taylor, cross-examined the People's witnesses, made numerous timely objections and presented cogent opening and closing statements. Accordingly, "despite any isolated and discrete shortcomings in counsel['s] . . . performance[ ], we are satisfied that defendant received meaningful representation" (*People v Goldston*, 126 AD3d 1175, 1179 [2015], *lv denied* 25 NY3d 1201 [2015]; *see People v Every*, 146 AD3d 1157, 1166 [2017]).

Finally, given defendant's prior felony conviction, his apparent lack of remorse and the brutal nature of the crimes, we find no abuse of discretion or extraordinary circumstances that

would warrant modification of defendant's sentence (*see e.g. People v Winchell*, 129 AD3d 1309, 1313 [2015], *lv denied* 26 NY3d 973 [2015]; *People v Vanderhorst*, 117 AD3d 1197, 1201-1202 [2014], *lv denied* 24 NY3d 1089 [2014]). As such, the imposition of the maximum sentence was neither harsh nor excessive.

Egan Jr., J.P., Devine and Aarons, JJ., concur. Ordered that the judgment is affirmed.