People v LaDuke (2022 NY Slip Op 02311)

People v LaDuke

2022 NY Slip Op 02311

Decided on April 7, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 7, 2022

111099
[*1]The People of the State of New York, Respondent,
v
Robert LaDuke, Appellant.

Calendar Date:February 16, 2022

Before:Egan Jr., J.P., Aarons, Pritzker, Reynolds Fitzgerald and Ceresia, JJ.

Hug Law, PLLC, Albany (Matthew C. Hug of counsel), for appellant, and appellant pro se.
P. David Soares, District Attorney, Albany (Emily Schultz of counsel), for respondent.

Reynolds Fitzgerald, J.
Appeal from a judgment of the Supreme Court (Breslin, J.), rendered March 12, 2019 in Albany County, upon a verdict convicting defendant of the crimes of attempted assault in the first degree, reckless endangerment in the second degree, criminal mischief in the second degree, criminal contempt in the first degree (two counts), unlawful fleeing a police officer in a motor vehicle in the third degree and attempted criminal contempt in the second degree (two counts).
Defendant and the victim were involved in an intermittent romantic relationship for approximately four years. After ending the relationship, the victim went to dinner at a friend's house. When the victim left her friend's house, defendant followed her car, repeatedly struck her vehicle with his truck and caused the victim's car to go off the road, at which point the victim fled on foot. As a result of the circumstances surrounding this incident, defendant was charged by indictment with attempted assault in the first degree, reckless endangerment in the first degree, criminal mischief in the second degree, four counts of criminal contempt in the first degree, unlawful fleeing a police officer in a motor vehicle in the third degree and two counts of attempted criminal contempt in the second degree. Prior to trial, Supreme Court granted the People's motion on consent to dismiss two of the counts of criminal contempt in the first degree. After a jury trial, defendant was found guilty of the remaining charges, except for reckless endangerment in the first degree, for which he was found guilty of the lesser included offense of reckless endangerment in the second degree. Defendant was thereafter sentenced, as a second felony offender, to a prison term of 15 years, to be followed by five years of postrelease supervision, for his conviction of attempted assault in the first degree, a consecutive prison term of 2 to 4 years for his conviction for one of the counts of criminal contempt in the first degree and to lesser concurrent prison terms for the remaining convictions. Defendant appeals.
Defendant initially contends that the verdict for his conviction of attempted assault in the first degree was not supported by legally sufficient evidence and was against the weight of the evidence. Specifically, defendant argues that the People failed to establish that he had the requisite intent to cause the victim to suffer serious physical injury. "When conducting a legal sufficiency analysis, we view the evidence in the light most favorable to the People and evaluate whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime charged" (People v Glover, 160 AD3d 1203, 1204 [2018] [internal quotation marks and citations omitted]). "In contrast, a weight of the evidence review requires [*2]this Court to first determine whether, based on all of the credible evidence, a different finding would have been unreasonable and, if not, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Watson, 174 AD3d 1138, 1139 [2019] [internal quotation marks and citations omitted], lv denied 34 NY3d 955 [2019]; see People v Warner, 194 AD3d 1098, 1099 [2021], lv denied 37 NY3d 1030 [2021]).
A person is guilty of attempted assault in the first degree when he or she attempts to cause serious physical injury to another person by means of a dangerous instrument (see Penal Law §§ 110.00, 120.10 [1]; People v Warner, 194 AD3d at 1099). A serious physical injury includes a "physical injury which creates a substantial risk of death" (Penal Law § 10.00 [10]). A dangerous instrument means, as relevant here, "any instrument, . . . including a 'vehicle' . . ., which, under the circumstances in which it is used, . . . is readily capable of causing death or other serious physical injury" (Penal Law § 10.00 [13]). "Where the defendant is charged with an attempt crime, he or she need not succeed in causing a serious physical injury; rather, all that is required is that the defendant intended such injury and engaged in conduct directed at accomplishing that objective" (People v Pine, 126 AD3d 1112, 1114 [2015] [internal quotation marks and citations omitted], lv denied 27 NY3d 1004 [2016]). "Intent may be inferred from [the] defendant's conduct and the surrounding circumstances" (People v Dickinson, 182 AD3d 783, 787 [2020] [citations omitted], lv denied 35 NY3d 1065 [2020]).
At trial, the victim described her relationship with defendant as being fraught with domestic violence. She testified that, on the night in question, she noticed defendant's truck behind her as she was driving away from her friend's house. Almost immediately, defendant rear-ended her vehicle hard enough to jolt her forward. The victim kept driving and accelerated her vehicle in an effort to get away from defendant. However, defendant pulled up alongside her — in the oncoming lane of traffic — and hit her on the driver side of her vehicle. The impact pushed her onto the shoulder of the road. The victim continued to accelerate to try to get away from defendant, but he rear-ended her again, pushing her into the oncoming lane of traffic. The victim recalled thinking "tonight I'm going to die." The victim drove approximately 60 miles per hour in a 30 mile-per-hour zone, but defendant kept up with her. She approached an intersection, with a red light, and noticed a car coming towards her. She navigated around the vehicle and went through the red light with defendant right behind her. When the victim drove into a gas station, defendant followed her and again rear-ended her with extreme force, pushing her vehicle [*3]through the gas station into the roadway. The victim attempted to speed away and was across the street from a local diner when defendant hit her vehicle again, sending her across the oncoming lane of traffic and off the road, where she had to slam on the brakes to avoid hitting a telephone pole. She then left her car and ran across the grass screaming for help. Defendant began pursuing the victim and yelled that he was going to kill her. The victim thought that she "was not going to make it." As she ran, the victim stumbled and fell. When she looked back, defendant was approximately 5 to 10 feet from her holding something in his right hand. At that moment, a uniformed police officer yelled stop, wherein defendant turned, retreated to his truck and drove away. The victim was in shock, nauseous, shaking and vomiting, but did not go to the hospital. The next morning, she realized that she had neck and back pain, which lasted approximately three or four weeks, and she also had sustained an ankle injury.
A police officer testified that he was at the diner at the time of the incident and observed defendant's black truck "ramming" into the victim's car. The officer described the impact as consisting of such "significant force" that it caused the car to "jump" and crumble with each hit and knocked the back bumper off. The officer observed the driver of the car, who he knew to be the victim, exit her vehicle while emitting "blood curdling screams," and the driver of the truck, who he later identified as defendant, exit his vehicle chasing after her while shouting that "he was going to f***ing kill her." The officer further testified that he began to give chase, identified himself as a police officer and yelled stop. Defendant turned around, looked at him, changed direction and returned to his truck. Defendant shut the door, locked it and drove away while the officer attempted to grab his baton to break the window. The officer took photographs of the scene, including the damage to the victim's vehicle. Later that evening, while at the victim's residence, the officer also conducted a controlled call from the victim to defendant, wherein defendant denied trying to kill the victim. Four other witnesses testified that they observed defendant rear-end the victim's vehicle multiple times.
Viewed in the light most favorable to the People, we find that this evidence presented a valid line of reasoning and permissible inferences from which a rational juror could conclude that defendant committed the crime of attempted assault by intending to cause serious physical injury to the victim (see People v Watson, 174 AD3d at 1140; People v Rivers, 152 AD3d 1054, 1057 [2017], lv denied 30 NY3d 1063 [2017]). Further, although a different result would not have been unreasonable had the jury credited defendant's exculpatory statement on the controlled call regarding his motives, viewing the evidence in a neutral light and deferring to the jury's credibility [*4]assessments, we find that the weight of the evidence readily supports the conviction of attempted assault in the first degree (see People v Daniels, 174 AD3d 955, 957 [2019], lvs dismissed 34 NY3d 950, 952 [2019]; People v Rawlinson, 170 AD3d 1425, 1428 [2019], lv denied 33 NY3d 1107 [2019]).
Defendant next asserts that Supreme Court improperly denied his pretrial motion alleging a violation of his statutory right to a speedy trial. "The People are obliged to declare their readiness for a felony trial within six months of the commencement of a criminal action, a period that is determined by computing the time elapsed between the filing of the first accusatory instrument and the People's declaration of readiness" (People v Rousaw, 151 AD3d 1179, 1179 [2017] [internal quotation marks and citations omitted]; CPL 30.30 [1]). The six-month period began to run upon the filing of the first accusatory instrument — here, the felony complaint filed on September 28, 2017. In turn, the People were required to declare their readiness by March 29, 2018. Defendant was indicted on March 21, 2018, and the People contemporaneously announced their readiness for trial. The People forwarded the indictment and statement of readiness to defendant's counsel by letter on said date. At defendant's subsequent arraignment on March 26, 2018, the People handed defendant, through his attorney, a copy of the indictment and statement of readiness, three days before the six-month period would have expired. Although defendant has provided a copy of the indictment that was filed on March 29, 2018 — after defendant's arraignment — this does not invalidate the indictment that was filed on March 21, 2018, given the People's explanation that there were multiple originals. Thus, Supreme Court properly found that defendant's statutory right to a speedy trial was not violated, as the People declared their readiness for trial within the time period prescribed by CPL 30.30 (1) (see People v Pope, 96 AD3d 1231, 1232-1233 [2012], lv denied 20 NY3d 1064 [2013]; People v Taylor, 57 AD3d 1518, 1518-1519 [2008], lv denied 12 NY3d 822 [2009]; People v Fields, 262 AD2d 793, 794 [1999], lv denied 93 NY2d 1017 [1999]).
Defendant further contends that Supreme Court's Molineux ruling, which allowed the People to present evidence of certain prior alleged acts of domestic violence against the victim, deprived him of a fair trial. "Although evidence of prior uncharged crimes or bad acts may never be presented for the sole purpose of establishing a defendant's criminal propensity or bad character, such evidence may be admissible if it is probative of some other material issue or fact in the case and its probative value outweighs any undue prejudice" (People v Knox, 167 AD3d 1324, 1325-1326 [2018] [citations omitted], lv denied 33 NY3d 950 [2019]; see People v Young, 190 AD3d 1087, 1092 [2021], lvs denied 36 NY3d 1100, 1102 [2021]; People v Gannon, 174 AD3d 1054, 1058 [2019], lv denied 34 NY3d 980[*5][2019]. "In situations involving domestic violence, prior bad acts are more likely to be relevant and probative because the aggression and bad acts are focused on one particular person, demonstrating the defendant's intent, motive, identity and absence of mistake or accident" (People v Womack, 143 AD3d 1171, 1173 [2016] [internal quotation marks and citations omitted], lv denied 26 NY3d 1151 [2017]).
The testimony regarding prior instances of bad acts and uncharged assaults were properly admitted to show defendant's intent and lack of mistake, to provide background information on the victim's and defendant's relationship and to complete the victim's narrative as to why she was afraid that defendant would hurt or kill her (see id. at 1173). Moreover, Supreme Court's ruling reflected a careful and thoughtful balancing of the probative value of the proffered evidence against its prejudicial impact, precluding a majority of the specified acts (see People v Knox, 167 AD3d at 1326; People v Conklin, 158 AD3d 973, 975-976 [2018], lv denied 31 NY3d 1080 [2018]). Additionally, "the court issued appropriate limiting instructions [to the jury] concerning the purpose for which [it] could consider the subject evidence, thereby limiting its prejudicial effect" (People v Conklin, 158 AD3d at 976; People v Burkett, 101 AD3d 1468, 1471 [2012], lv denied 20 NY3d 1096 [2013]). Accordingly, we discern no error or abuse of discretion in Supreme Court's Molineux ruling.
We reject defendant's contention that he was not afforded meaningful representation. "To establish a claim of ineffective assistance of counsel, a defendant is required to demonstrate that he or she was not provided meaningful representation and that there is an absence of strategic or other legitimate explanations for counsel's allegedly deficient conduct" (People v Porter, 184 AD3d 1014, 1018-1019 [2020] [internal quotation marks and citations omitted], lv denied 35 NY3d 1069 [2020]). "An ineffective assistance of counsel claim will fail so long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation" (People v Rosario, 157 AD3d 988, 993 [2018] [internal quotation marks and citations omitted], lv denied 31 NY3d 1121 [2018]).
Defendant asserts that counsel was ineffective for failing to request lesser included charges of assault in the second and third degrees. The record reflects, however, that counsel's
decision not to request lesser charges was consistent with counsel's overall strategy of demonstrating that defendant did not have the intent to cause the victim serious injury. Accordingly, on this record, the failure to request a lesser included charge did not amount to ineffective assistance, and defendant has failed to show that this course of conduct was anything other than a permissible all or nothing strategy (see People v Mamadou, 172 AD3d 1524, 1526 [*6][2019], lv denied 33 NY3d 1106 [2019]; People v Rosario, 157 AD3d at 994; People v Briskin, 125 AD3d 1113, 1122 [2015], lv denied 25 NY3d 1069 [2015]). Defendant further claims that counsel was ineffective for failing to make certain motions and objections. We find that defendant's claims in this regard lack merit as "[c]ounsel will not be found to be ineffective on the basis that he or she failed to make an argument or motion that has little or no chance of success" (People v Brown, 169 AD3d 1258, 1260 [2019] [internal quotation marks and citations omitted], lv denied 33 NY3d 1029 [2019]; see People v Bombard, 187 AD3d 1417, 1420 [2020]; People v Santana, 179 AD3d 1299, 1302 [2020], lv denied 35 NY3d 973 [2020]). As to defendant's claim that counsel should have objected when the People violated Supreme Court's Molineux ruling by soliciting testimony from the victim about how her child was present when defendant hit her, even assuming that defendant is correct in this regard, "the record supports the conclusion that no reasonable possibility exists of a different outcome but for the error" (People v Miller, 45 AD3d 1190, 1190 [2007]). Viewing the record as a whole, defense counsel made cogent opening and closing statements, vigorously cross-examined the People's witnesses and lodged numerous successful objections thereby providing defendant with meaningful representation (see People v Bombard, 187 AD3d at 1420; People v Brown, 169 AD3d at 1260; People v Stetin, 167 AD3d 1245, 1250-1251 [2018], lv denied 32 NY3d 1178 [2019]).
Finally, we find no merit to defendant's claim that the sentence imposed was harsh and excessive. "A sentence that falls within the permissible statutory range will not be disturbed unless it can be shown that the sentencing court abused its discretion or extraordinary circumstances exist warranting a modification" (People v Miller, 160 AD3d 1040, 1044 [2018] [internal quotation marks and citations omitted], lv denied 32 NY3d 939 [2018]). In view of defendant's prior criminal history and lack of remorse, we find no abuse of discretion or extraordinary circumstances warranting a reduction of the sentence in the interest of justice (see People v Johnson, 183 AD3d 77, 91 [2020], lv denied 35 NY3d 993 [2020]; People v Horton, 173 AD3d 1338, 1342 [2019], lv denied 34 NY3d 933 [2019]; People v Hartle, 159 AD3d 1149, 1155 [2018], lv denied 31 NY3d 1082 [2018]). Defendant's challenge to the order of protection relating to the child was not raised at sentencing and it is therefore unpreserved for our review (see People v Donnelly, 199 AD3d 1167, 1168 [2021]).
Egan Jr., J.P., Aarons, Pritzker and Ceresia, JJ., concur.
ORDERED that the judgment is affirmed.