People v Smith (2022 NY Slip Op 06653)

People v Smith

2022 NY Slip Op 06653

Decided on November 23, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 23, 2022

112080
[*1]The People of the State of New York, Respondent,
v
Daquan Smith, Appellant.

Calendar Date:October 14, 2022

Before:Garry, P.J., Egan Jr., Clark, Ceresia and Fisher, JJ.

Tina K. Sodhi, Alternate Public Defender, Albany (Steven M. Sharp of counsel), for appellant.
P. David Soares, District Attorney, Albany (Jonathan P. Catania of counsel), for respondent.

Ceresia, J.
Appeal from a judgment of the Supreme Court (Peter A. Lynch, J.), rendered August 5, 2019 in Albany County, upon a verdict convicting defendant of the crimes of burglary in the second degree and criminal contempt in the first degree.
Defendant was charged with burglary in the second degree, criminal contempt in the first degree and other related crimes after breaking into the residence of his estranged wife (hereinafter the victim) in violation of an order of protection. Following a jury trial, defendant was convicted of burglary in the second degree and criminal contempt in the first degree. Supreme Court sentenced defendant, as a second violent felony offender, to a prison term of 10 years followed by five years of postrelease supervision on the burglary conviction, and an indeterminate, concurrent prison term of 2 to 4 years on the criminal contempt conviction. Defendant appeals.
Turning first to defendant's claim that his convictions are not supported by legally sufficient evidence and are against the weight of the evidence, defendant's legal sufficiency argument is unpreserved, as he failed to move to dismiss the burglary count at the close of the defense case (see People v Cason, 203 AD3d 1309, 1310 [3d Dept 2022], lv denied 38 NY3d 1132 [2022]), and his motion to dismiss the criminal contempt count was not directed at the error now raised on appeal (see People v Barber, 182 AD3d 794, 795 [3d Dept 2020], lv denied 35 NY3d 1064 [2020]). Nevertheless, "a weight of the evidence challenge, which bears no preservation requirement, also requires consideration of the adequacy of the evidence as to each element of the crimes" (People v Delbrey, 179 AD3d 1292, 1292-1293 [3d Dept 2020] [internal quotation marks and citations omitted], lv denied 35 NY3d 969 [2020]).
To that end, "[a] person is guilty of burglary in the second degree when he [or she] knowingly enters or remains unlawfully in a building with intent to commit a crime therein, and . . . [t]he building is a dwelling" (Penal Law § 140.25 [2]). "A person 'enters or remains unlawfully' in or upon premises when he [or she] is not licensed or privileged to do so" (Penal Law § 140.00 [5]). Separately, "[a] person is guilty of criminal contempt in the first degree when[,] . . . in violation of a duly served order of protection," such person, "by physical menace, intentionally places or attempts to place a person for whose protection such order was issued in reasonable fear of death, imminent serious physical injury or physical injury" (Penal Law § 215.51 [b] [vi]).
The victim testified about three incidents that occurred prior to the date of the charged crimes — one on April 8, 2018 and two on June 29, 2018. With respect to the April 8, 2018 incident, defendant was living with the victim in a third-floor apartment in the City of Albany. The apartment had a front door accessed by a common stairwell inside the building, and a back door accessed by a fire escape. At some point during that day[*2], defendant and the victim argued, and the victim locked defendant out of the apartment. Defendant then went around to the back door, kicked it in, hit the victim in the face and attempted to suffocate her, leading to the issuance on June 21, 2018 of a full stay-away order of protection. As for the subsequent incidents that occurred on June 29, 2018, the victim arrived home during the morning hours, heard a noise, and encountered defendant in the back of the apartment. The victim told defendant to leave and that she was going to call the police. By the time the police arrived, defendant had already left. The police assisted the victim in putting defendant's clothes and belongings in plastic bags and leaving them outside, next to the apartment building. That night, defendant returned to the apartment and kicked in the back door. The victim ran out the front door and down the street. She got the attention of a police officer who accompanied her back to the apartment, but defendant was no longer there.
Subsequently, on July 1, 2018, the night of the charged crimes, the victim was concerned that defendant would again come to the apartment, so she barricaded the back door with furniture. At some point thereafter, the victim heard a bang at the back door. She unsuccessfully attempted to awaken her young daughter who was sleeping beside her, and then fled through the apartment and out the front door, before falling down the stairs. Once she got outside of the building, her daughter came running out and the two of them ran around the corner to look for help. The victim was clad only in a T-shirt and boxer shorts with no shoes. While the victim never actually saw defendant inside the apartment, she testified that she "heard him behind [her]" and saw him run out of the front of the building.
According to the testimony of a neighbor, who was sitting in his car outside the apartment building that night, he "heard a boom" and saw the victim come running out the front of the apartment building, followed by her daughter. Moments later, defendant opened the neighbor's car door and jumped in, but the neighbor told defendant to get out, and he did so. The neighbor then drove around the corner and encountered the victim and her daughter. At the victim's request, the neighbor drove them to the police station.
The jury also heard testimony from several law enforcement officers, including the officer who met the victim at the police station, observed her wearing pajama-type clothing with no shoes, and described her as "frantic" and "terrified, like she was being chased by somebody." Other officers responded to the victim's apartment and detained defendant after observing him coming down the fire escape and jumping over a fence. Defendant was described as "extremely sweaty, pretty anxious and questioning why [law enforcement was] stopping him." One officer entered the apartment and observed that the back door jamb was broken and the door was halfway open, with furniture [*3]pushed against it. The People also submitted into evidence the video recording of defendant's interview with the police, during which, among other things, he denied being inside the apartment and claimed that the victim had broken the back door herself.
Had the jury been persuaded by defendant's explanation of the events in his police interview and found the victim unworthy of belief, a different verdict would not have been unreasonable (see People v Turner, 207 AD3d 889, 890 [3d Dept 2022], lv denied 38 NY3d 1190 [2022]; People v Cason, 203 AD3d at 1314). With that said, viewing the evidence in a neutral light and deferring to the jury's credibility assessments, we are satisfied that the verdict is not contrary to the weight of the evidence (see People v Cason, 203 AD3d at 1314; People v Hajratalli, 200 AD3d 1332, 1336 [3d Dept 2021], lv denied 38 NY3d 1033 [2022]). Although defendant argues that there is inadequate proof that he entered the apartment, inasmuch as the victim did not actually see him inside and the police merely observed him behind the building, it was the victim's testimony that she heard defendant chasing behind her in the apartment, and she also indicated that she saw him run out of the front of the building. This evidence, together with the reasonable inferences that can be drawn therefrom, adequately established defendant's entry into the apartment (see People v Hunter, 55 AD3d 1052, 1053 [3d Dept 2008], lv denied 11 NY3d 898 [2008]).
As for defendant's claim that the evidence failed to demonstrate his intent to commit a crime within the apartment, "the intent necessary for burglary can be inferred from the circumstances of the entry itself" (People v Cason, 203 AD3d at 1311 [internal quotation marks and citations omitted]; see People v Haynes, 177 AD3d 1194, 1195 [3d Dept 2019], lv denied 34 NY3d 1128 [2020]). To that end, evidence of defendant's forced entry late at night (see People v Hajratalli, 200 AD3d 1332 at 1336; People v Van Praag, 153 AD3d 559, 560 [2d Dept 2017], lv denied 30 NY3d 984 [2017]), together with the proof of a previous instance when he had entered the apartment in a similar manner and attacked the victim (see People v Gates, 171 AD3d 543 [1st Dept 2019], lv denied 33 NY3d 1104 [2019]), permitted the jury to infer, as the People theorized, that defendant entered the apartment with the intent to commit a crime of violence against the victim. This same proof, contrary to defendant's contention, readily established the element of intent to place or attempt to place the victim in reasonable fear of death, serious physical injury or physical injury as required by the criminal contempt count.
We reject defendant's contention that Supreme Court erred in allowing evidence of the April 8, 2018 and June 29, 2018 incidents. The court properly found that these incidents constituted non-propensity evidence probative of defendant's intent (see People v LaDuke, 204 AD3d 1083, 1088 [3d Dept 2022], lv denied 38 NY3d [*4]1072 [2022]; People v Knox, 167 AD3d 1324, 1326 [3d Dept 2018], lv denied 33 NY3d 950 [2019]) and were also inextricably interwoven with the charged crimes — that is, the April 8 incident led to the issuance of the order of protection (see People v Thibeault, 73 AD3d 1237, 1241 [3d Dept 2010], lv denied 15 NY3d 810 [2010], cert denied 562 US 1293 [2011]) and the June 29 incidents provided context for the People's position that defendant was angry at her two nights later (see People v Haynes, 177 AD3d at 1197-1198. Having found these incidents to be probative, the court appropriately conducted a balancing of said probative value against the potential for undue prejudice (see People v Watson, 150 AD3d 1384, 1386 [3d Dept 2017], lv denied 29 NY3d 1135 [2017]). In that regard, although the court initially ruled that only the events of June 29 would be admissible, upon consideration of a further proffer from the People, the court revisited that decision and allowed proof of the April 8 incident as well. In fashioning that ruling, the court excluded evidence of nine other bad acts involving defendant and the victim. Under these circumstances, and noting that the court provided a thorough limiting instruction during the People's opening statement, which is presumed to have been followed by the jury (see People v Cunny, 163 AD3d 708, 711 [2d Dept 2018], lv denied 32 NY3d 1063 [2018]), we discern no abuse of discretion in the court's evidentiary ruling (see People v LaDuke, 204 AD3d at 1088; People v Anthony, 152 AD3d 1048, 1051 [3d Dept 2017], lv denied 30 NY3d 978 [2017]).[FN1]
Regarding defendant's argument that certain testimony given by the victim was nonresponsive and, as such, deprived him of a fair trial, we disagree. During cross-examination of the victim, defense counsel pursued a line of questioning concerning the circumstances surrounding the victim and her children living with the children's grandmother, until a point when the grandmother kicked the victim out of the house upon discovering that defendant had been there. In answering these questions, the victim ultimately explained that the grandmother took this course of action because she "knew about the domestic violence going on." Having reviewed the relevant trial testimony, we are satisfied that the victim's answers constituted fair responses to the questions that were being posed to her. For this reason, we also find that defense counsel opened the door to allow for the People's brief follow-up on this topic on redirect examination of the victim (see People v Nunes, 118 AD2d 597, 597-598 [2d Dept 1986], lv denied 67 NY2d 948 [1986]).
We find no merit to defendant's argument that Supreme Court should have submitted for the jury's consideration the charge of criminal trespass in the second degree as a lesser included offense of burglary in the second degree, on the theory that, even had defendant entered the apartment unlawfully, he did not do so with the intent to commit a crime therein. As [*5]relevant here, "[a] lesser included offense of a crime charged in an indictment may be considered by the factfinder provided that . . . there is a reasonable view of the evidence to support a finding that the defendant committed the lesser offense but not the greater" (People v Stanton, 200 AD3d 1307, 1309 [3d Dept 2021] [internal quotation marks and citations omitted], lv denied 38 NY3d 954 [2022]). In this case, "[t]here was no reasonable evidence suggesting a noncriminal purpose for [defendant's] entry into the victim's [apartment]" (People v Sturdevant, 74 AD3d 1491, 1493 [3d Dept 2010] [internal quotation marks and citation omitted], lv denied 15 NY3d 810 [2010]; see People v File, 201 AD3d 1036, 1039 [3d Dept 2022], lv denied 38 NY3d 950 [2022]; People v Moreno, 187 AD3d 449, 450 [1st Dept 2020], lv denied 36 NY3d 974 [2020]). To the extent that defendant argues in his appellate brief that the jury could have concluded that he had no intent to commit a crime upon entering the apartment as he was merely attempting to retrieve his belongings, we note that the evidence indicated — and, indeed, defendant acknowledged during his recorded police interview — that his belongings had already been removed from the apartment and left outside two nights prior to the night in question. Further undermining any argument that defendant was only at the apartment for an innocent purpose is the unrefuted evidence that the back door had been broken open, despite having furniture placed against it (see People v Moreno, 187 AD3d at 450; People v Miles, 55 AD3d 955, 956 [3d Dept 2008], lv denied 11 NY3d 928 [2009]). Given this trial evidence, the court properly declined to charge the lesser included offense of criminal trespass in the second degree.
Finally, in light of defendant's criminal history and the seriousness of the conduct underlying his convictions, we find no merit to his claim that his sentence was harsh and excessive (see People v Gertz, 204 AD3d 1166, 1172 [3d Dept 2022], lv denied 38 NY3d 1070 [2022]).
Garry, P.J., Egan Jr., Clark and Fisher, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: While it would have been the more prudent course for Supreme Court to include additional cautionary instructions when the evidence was admitted and during the final jury charge, we note that defendant never requested any further instruction, nor did he object to the final charge (see People v Jabaut, 111 AD3d 1140, 1145 [3d Dept 2013], lv denied 22 NY3d 1139 [2014]).