People v Stines (2023 NY Slip Op 00003)

People v Stines

2023 NY Slip Op 00003

Decided on January 5, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:January 5, 2023

110904 111961
[*1]The People of the State of New York, Respondent,
v
Tyeree C. Stines, Appellant.

Calendar Date:November 14, 2022

Before:Garry, P.J., Clark, Aarons, Pritzker and McShan, JJ.

Mitchell S. Kessler, Cohoes, for appellant, and appellant pro se.
Elizabeth M. Crawford, District Attorney, Malone (Jennifer M. Hollis of counsel), for respondent.

Pritzker, J.
Appeals (1) from a judgment of the County Court of Franklin County (Derek P. Champagne, J.), rendered April 16, 2018, upon a verdict convicting defendant of the crimes of attempted assault in the first degree, criminal use of a firearm in the second degree, criminal possession of a weapon in the second degree and endangering the welfare of a child, and (2) by permission, from an order of said court, entered November 13, 2019, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, without a hearing.
Defendant was charged by a six-count indictment with the crimes of attempted murder in the second degree, criminal use of a firearm in the first degree, attempted assault in the first degree, criminal use of a firearm in the second degree, criminal possession of a weapon in the second degree and endangering the welfare of a child stemming from an incident in February 2017 when he shot a handgun through the front door of his ex-girlfriend's (hereinafter the victim) house in the Town of Malone, Franklin County. Following a five-day jury trial, defendant was found not guilty of attempted murder in the second degree and convicted of the other five counts. As a result of the not guilty verdict on the count of attempted murder in the second degree, County Court dismissed the criminal use of a firearm in the first degree conviction. Subsequently, defendant unsuccessfully moved to set aside the verdict and was thereafter sentenced to concurrent prison terms of 12 years, to be followed by five years of postrelease supervision for attempted assault in the first degree, criminal use of a firearm in the second degree and the criminal possession of a weapon convictions, and a concurrent one-year jail term for the endangering the welfare of a child conviction.
As relevant here, defendant then moved, pro se, pursuant to CPL 440.10 to vacate the judgment (hereinafter the first motion) asserting that the judgment was obtained in violation of his constitutional rights due to ineffective assistance of counsel. The People opposed, and County Court thereafter denied this motion. Defendant again moved, pro se, pursuant to CPL 440.10 to vacate the judgment (hereinafter the second motion) alleging, among other things, that his trial counsel was ineffective. The People opposed, and County Court thereafter denied the motion without a hearing. Defendant appeals from the judgment of conviction and, by permission, the denial of the second motion.[FN1]
Defendant contends that the verdict as to the convictions for attempted assault in the first degree and criminal use of a firearm in the second degree are legally insufficient and against the weight of the evidence because the People failed to establish that defendant acted with specific intent to injure.[FN2] As relevant here, a person is guilty of attempted assault in the first degree when, "[w]ith intent to cause serious physical injury to another person, he [or she attempts to] cause[] such injury [*2]to such person or to a third person by means of a deadly weapon" (Penal Law § 120.10 [1]; see Penal Law § 110.00). "Where the defendant is charged with an attempt crime, he or she need not succeed in causing a serious physical injury; rather, all that is required is that the defendant intended such injury and engaged in conduct directed at accomplishing that objective" (People v Pine, 126 AD3d 1112, 1114 [3d Dept 2015] [internal quotation marks and citations omitted], lv denied 27 NY3d 1004 [2016]; accord People v LaDuke, 204 AD3d 1083, 1085 [3d Dept 2022], lv denied 38 NY3d 1072 [2022]). "Intent may be inferred from the defendant's conduct and the surrounding circumstances" (People v LaDuke, 204 AD3d at 1085 [internal quotation marks, brackets and citations omitted]; see People v Terry, 196 AD3d 840, 842 [3d Dept 2021], lv denied 37 NY3d 1030 [2021]). Also as relevant here, a person is guilty of criminal use of a firearm in the second degree when he or she commits attempted assault in the first degree and "possesses a deadly weapon, if the weapon is a loaded weapon from which a shot, readily capable of producing death or other serious injury may be discharged" (Penal Law § 265.08 [1]; see Penal Law § 70.02 [1] [a], [b]).
The victim testified at trial that she dated defendant for 10 years and that they previously lived together. On the night of the incident she was at her house, in her bedroom, when she received a phone call from defendant during which he accused her of harassing his then girlfriend (hereinafter the girlfriend) at McDonald's. Minutes later, she heard a bang, and then the sound of glass breaking. The victim's friend's daughter, who was 15 years old at the time, was with her in the bedroom, and the victim's son, who was 10 years old at the time, was in the bathroom. The friend's daughter then called 911 and, when police arrived shortly thereafter, the victim opened the door and the glass of the screen door shattered at her feet. The victim testified that, while she was with the police, defendant again called saying "something about McDonalds" and that the call was on speakerphone. The victim described to police what vehicle defendant might be driving. The victim also explained that, at the time of the incident, the light was on in the living room, which can be seen from the street, and that her vehicle, which defendant is familiar with, was in the driveway. The son and the friend's daughter generally corroborated the victim's testimony of the events that occurred. The friend's daugther also described seeing bullet holes through the front door and toward the wall next to a couch.
The girlfriend testified that she was dating defendant at the time of the incident. She also corroborated that, on the day of the incident, the victim came through the McDonald's drive thru, where the girlfriend worked, and that she told defendant about it, which led to an argument between defendant and the girlfriend. The girlfriend testified that, on the [*3]night of the incident, she was with defendant, who was driving the girlfriend's mother's car, when he pulled up in front of the victim's house. She testified that she saw defendant pull out a handgun that she knew to be defendant's from between the seat and the console. According to the girlfriend, she then exited the vehicle because she did not know what was going on and did not want to know.
Investigating officers reported seeing a bullet hole in the victim's front door. One of the responding officers described the glass all over the floor from the broken storm door and a hole in the interior wall. He described the bullet as entering the front door "about head level" and explained that he recovered a bullet which he recognized to be .40 caliber. This officer also testified that he found a shell casing in the victim's driveway, which he determined matched a second bullet hole in the victim's house. Testimony established that this bullet was lodged in an exterior wall and that on the other side of this wall is the living room. Law enforcement testimony also demonstrated that a search warrant was obtained for the vehicle that the victim thought defendant would be driving; ammunition, as well as a handgun, that matched the .40 caliber bullet found in the victim's house, were found inside the vehicle. This handgun also matched the handgun described by defendant to law enforcement as the one he owned. A gunshot residue analyst testified that defendant had gunshot residue on both of his palms.
"Based on the foregoing, when construing the evidence in the light most favorable to the People as we must, a rational person could conclude that" defendant possessed the requisite intent to support the convictions of attempted assault in the first degree and criminal use of a firearm in the second degree (People v Slivienski, 204 AD3d 1228, 1234 [3d Dept 2022] [citations omitted], lv denied 38 NY3d 1136 [2022]; see People v Terry, 196 AD3d at 845). Specifically, defendant's intent to cause serious physical injury to the victim can be inferred by defendant having called the victim minutes before the shooting and asking about her encounter with the girlfriend. Moreover, defendant having lived with the victim supports the inference that he was familiar with the layout of the victim's house and would be aware of the location of the living room, in which the lights were on. This is significant given police testimony that the bullet entered the front door at "about head level." Thus, defendant's intent to cause serious physical injury — rather than any intent to merely act recklessly — can be reasonably inferred from his actions (see People v Stover, 178 AD3d 1138, 1143 [3d Dept 2019], lv denied 34 NY3d 1163 [2020]). As to the weight of the evidence, although a different verdict would not have been unreasonable given the circumstantial evidence of defendant's mental state, "when viewing all of the evidence in a neutral light and deferring to the jury's credibility [*4]determinations, we find that the weight of the credible evidence supports the conclusion" that defendant acted with the intent to cause serious physical injury (People v Slivienski, 204 AD3d at 1235; see People v Noel, 207 AD3d 956, 958 [3d Dept 2022], lv denied 39 NY3d 941 [2022]).
We now turn to defendant's appeal from the denial of the second motion, which he contends was erroneous because trial counsel was ineffective due to a failure to adequately investigate a potential alibi defense. As relevant here, a CPL 440.10 motion may be denied when "[t]he ground or issue raised upon the motion was previously determined on the merits upon a prior motion or proceeding" (CPL 440.10 [3] [b]). "Although the court may deny the motion under [this circumstance], in the interest of justice and for good cause shown it may in its discretion grant the motion if it is otherwise meritorious and vacate the judgment" (CPL 440.10 [3]). Here, defendant raised in the first motion the issue of ineffective asssitance of counsel based upon a failure to investigate potential alibi witnesses. County Court denied the first motion as to this issue on the merits because defendant's claims were not supported by any affidavits or documentary evidence. Defendant then raised this issue again in the second motion, which the court again denied. Inasmuch as County Court addressed defendant's claims of ineffective assistance of counsel in the first motion, the court properly exercised its discretion to deny the second motion as this issue was raised and determined on its merits in the first motion (see CPL 440.10 [3] [b]; People v Chaney, 160 AD3d 1281, 1286 [3d Dept 2018], lv denied 31 NY3d 1146 [2018]).
Finally, to the extent defendant, in his pro se brief, alleges ineffective assistance of counsel based upon other alleged failures, we find this assertion to lack merit. Defendant sets forth these alleged failings without any particular description or citation to the record. Moreover, we find these nonspecific assertions unsupported by the record. "Our review of the record reveals that counsel presented a clear and consistent defense, which he developed through relevant cross-examination of witnesses, made appropriate motions before, during and after trial and, importantly, succeeded in obtaining a not guilty verdict on . . . the most serious crime charged" (People v Edwards, 96 AD3d 1089, 1091-1092 [3d Dept 2012], lv denied 19 NY3d 1102 [2012]; see People v Agan, 207 AD3d 861, 870 [3d Dept 2022], lvs denied 38 NY3d 1186 [2022], 39 NY3d 939 [2022]). Accordingly, defendant was provided with meaningful representation. Defendant's remaining contentions, including those in his pro se brief, have been reviewed and found to be lacking in merit.
Garry, P.J., Clark, Aarons and McShan, JJ., concur.
ORDERED that the judgment and the order are affirmed.

Footnotes

Footnote 1: Defendant moved for an order staying execution of the judgment of conviction pending appeal and for release on recognizance, which motion this Court (Lynch, J.) denied (2021 NY Slip Op 61738[U] [3d Dept 2021]).
Footnote 2: To the extent that defendant is arguing that the verdict is factually inconsistent based upon the jury finding him not guilty of attempted murder in the second degree, this contention is without merit. "[I]t is imprudent to speculate concerning the factual determinations that underlay the verdict because what might appear to be an irrational verdict may actually constitute a jury's permissible exercise of mercy or leniency" (People v Horne, 97 NY2d 404, 413 [2002]; see People v Diaz, 152 AD3d 471, 472-473 [1st Dept 2017], lv denied 30 NY3d 1019 [2017]).