People v Holmes (2024 NY Slip Op 02560)

People v Holmes

2024 NY Slip Op 02560

Decided on May 9, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 9, 2024

112842
[*1]The People of the State of New York, Respondent,
v
Robert W. Holmes III, Appellant.

Calendar Date:March 28, 2024

Before:Garry, P.J., Egan Jr., Fisher, McShan and Powers, JJ.

Veronica Reed, Schenectady, for appellant.
William G. Gabor, District Attorney, Wampsville (J. Scott Porter of counsel), for respondent.

Garry, P.J.
Appeal from a judgment of the Supreme Court (Donald F. Cerio Jr., J.), rendered March 16, 2020 in Madison County, convicting defendant following a nonjury trial of the crimes of burglary in the second degree (two counts), rape in the first degree, criminal obstruction of breathing or blood circulation and criminal trespass in the second degree.
In December 2018, defendant repeatedly entered the apartment of his former paramour (hereinafter the victim) and engaged in sexual intercourse with the victim without her consent, causing her injuries, and applied pressure to her throat. Defendant was thereafter charged by indictment with, among other things, three counts of burglary in the second degree (counts 1, 5, 7), one count of rape in the first degree (count 3) and one count of criminal obstruction of breathing or blood circulation (count 6).[FN1] Following a nonjury trial before Supreme Court (Cerio Jr., J.), defendant was convicted of two counts of burglary in the second degree (counts 1, 5), rape in the first degree (count 3), criminal obstruction of breathing or blood circulation (count 6) and criminal trespass in the second degree (as a lesser included offense under count 7). Defendant was sentenced, as a second felony offender, to 15 years in prison and 10 years of postrelease supervision on his conviction of burglary in the second degree as charged in count 1, 25 years in prison and 25 years of postrelease supervision on his conviction of rape in the first degree (count 3), concurrent to the sentence on count 1, and to 10 years in prison and 10 years of postrelease supervision on his conviction of burglary in the second degree as charged in count 5, consecutive to counts 1 and 3. He was also sentenced to one year each on the convictions of criminal obstruction of breathing and criminal trespass, resulting in an aggregate sentence of 35 years in prison. Defendant appeals.
Defendant contends that the verdict is not supported by legally sufficient evidence and is against the weight of the evidence. Specifically, he argues that there is insufficient proof as to the element of intent relative to burglary in the second degree and, upon the charge of rape in the first degree, insufficient proof as to the timing of the sexual intercourse alleged in the indictment and the element of forcible compulsion. Initially, defendant properly preserved his claim as to forcible compulsion, but failed to preserve his legal sufficiency arguments as to intent and timing (see People v Tunstall, 149 AD3d 1249, 1249 [3d Dept 2017], lv denied 30 NY3d 1023 [2017]; People v Acevedo, 118 AD3d 1103, 1104 [3d Dept 2014], lv denied 26 NY3d 925 [2015]). "In conducting a legal sufficiency analysis, this Court views the evidence in the light most favorable to the People and evaluates whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter [*2]of law satisfy the proof and burden requirements for every element of the crime charged" (People v Moore, 223 AD3d 1085, 1086 [3d Dept 2024] [internal quotation marks and citations omitted]; see People v Peasley, 208 AD3d 1466, 1467 [3d Dept 2022], lv denied 39 NY3d 1074 [2023]).
Despite defendant's failure to preserve all of his legal sufficiency arguments, in addressing his contention that the verdict is against the weight of the evidence, "we necessarily determine whether the People proved each element of the charged crimes beyond a reasonable doubt" (People v Cason, 203 AD3d 1309, 1310 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 38 NY3d 1132 [2022]; see People v Hodgins, 202 AD3d 1377, 1378-1379 [3d Dept 2022]). "When undertaking a weight of the evidence review, this Court must first determine whether, based on all the credible evidence, a different finding would not have been unreasonable and, if not, then it must weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence. When conducting this review, this Court considers the evidence in a neutral light and defers to the [factfinder]'s credibility assessments" (People v Moore, 223 AD3d at 1086-1087 [internal quotation marks, brackets and citations omitted]; see People v Scott, 219 AD3d 1572, 1573 [3d Dept 2023]; People v Kilgore, 218 AD3d 1054, 1055 [3d Dept 2023], lv denied 40 NY3d 1081 [2023]).
Pertinent here, "[a] person is guilty of burglary in the second degree when he [or she] knowingly enters or remains unlawfully in a building with intent to commit a crime therein, and . . . [t]he building is a dwelling" (Penal Law § 140.25 [2]). In this regard, "[a] defendant's intent to commit a crime may be properly inferred from, among other things, the circumstances of the entry, his or her unexplained presence in the dwelling and his or her actions and statements while on the premises" (People v Cason, 203 AD3d at 1311 [internal quotation marks, brackets and citations omitted]; see People v Smith, 210 AD3d 1297, 1300 [3d Dept 2022], lv denied 39 NY3d 1080 [2023]). "A person is guilty of rape in the first degree when he or she engages in sexual intercourse with another person . . . [b]y forcible compulsion" (Penal Law § 130.35 [1]). " 'Forcible compulsion' means to compel by either . . . use of physical force; or . . . a threat, express or implied, which places a person in fear of immediate death or physical injury to himself, herself or another person" (Penal Law § 130.00 [8]).
The evidence and testimony adduced at trial established that defendant and the victim had a tumultuous and sporadic relationship spanning the course of several years. The victim testified that defendant abused alcohol and had been physically and verbally abusive throughout their relationship. Although the victim permitted defendant [*3]to live with her on occasion, he was not on her lease or utilities. On October 23, 2018, the victim obtained a temporary order of protection against defendant, effective through April 23, 2019, and defendant was served with that order. In November 2018, the victim asked defendant to collect his belongings from her apartment but permitted him to stay there intermittently thereafter. On November 20, 2018, a permanent two-year order of protection was issued. The victim testified that she presented defendant with a copy of the November order that same day and asked him to leave, but he refused. The following day, an officer responded to the victim's home regarding a possible order of protection violation. The officer testified that, at that time, the victim indicated that she did not want defendant removed from the apartment. Nevertheless, although the November order of protection had not yet been served, the officer expressly advised defendant of that order.
According to the victim, by December 2018, defendant alternated between staying at the victim's apartment, a tent that she had given him, and another woman's home. On December 18, 2018, the victim repeatedly let defendant into her home. She testified that she did so after he had banged on her door for 15 to 20 minutes and she had become concerned about her neighbors. Throughout that evening, defendant, who was intoxicated, verbally and physically abused her and threatened to choke and kill her. According to the victim, in the early morning hours defendant put a pillow over her face and pushed her against a wall, making aggressive sexual advances upon her. When she told him that she was "not in the mood," he brought her into the living room and began removing her clothing. She then told him that he was hurting her and would undress herself. Defendant thereafter had sexual intercourse with her, biting her in several places. The victim testified that she had intercourse with defendant because she was afraid and that she had told him that she was "scared." Although defendant later left the apartment, the victim testified that she let him return, out of fear. Upon returning, defendant forcefully grabbed her throat. After defendant left again, the victim called her contact at a victims' advocacy group because she "feared for [her] life," but hung up when defendant returned. Defendant's verbal and physical abuse continued and, when the victim was later able to briefly leave the apartment, she again contacted the victims' advocate for assistance in removing defendant from her home. The victim explained that she did not contact police because she did not believe that they would help. The victim's supporting deposition was largely consistent with her trial testimony.
An officer who responded to a trespass complaint at the victim's apartment on December 19, 2018, testified that he arrested defendant and removed him from the victim's apartment after a file search revealed the November order of protection. [*4]According to the officer, defendant admitted that he was aware of the order but stated that he had not yet been served with it. The victim was also brought to the police station to be interviewed. According to the officer, the victim appeared frightened by defendant. At that time, she reported that she had had sexual intercourse with defendant despite not wanting to do so, but she did not accuse him of rape in her written statement. The officer then took photographs of the victim, which were admitted into evidence, showing slight bruising, cuts or scratches on the victim's legs, thighs, neck and ears. When confronted, defendant told police that the victim's injuries were due to "rough sex."
The victims' advocate, whom the victim had contacted on December 19, 2018, testified that the victim had called seeking assistance in removing defendant from her apartment. Although the victim did not mention any sexual assault having occurred at that time, she expressed that she had been threatened by defendant and feared for her life. A physician's assistant who examined the victim two months later, in February 2019, testified that she found evidence of sexual assault consistent with the victim's report that she had been "repeatedly physically and sexually assaulted over two days in December." However, she further stated that such injuries could have been due to partners in the intervening two months, or to some other nonsexual activity.
Defendant did not testify at trial, but his redacted grand jury testimony was admitted into evidence upon the parties' stipulation. Therein, he testified that on the dates in question the victim had allowed him to stay at her apartment and he was not aware of any order of protection. He further denied having any sexual intercourse with the victim on those days or to having threatened or physically abused her.
Upon this record, we find that the People presented legally sufficient evidence as to the element of forcible compulsion to support defendant's conviction for rape in the first degree. The victim testified regarding defendant's verbal abuse and physical violence leading up to the sexual assault, as well as her statements and actions indicative of her lack of consent and fear of defendant at that time. Her trial testimony was consistent with the photographic evidence of her resulting injuries and later medical examination. Viewing this evidence in the light most favorable to the People, there is a valid line of reasoning and permissible inferences to conclude that defendant subjected the victim to sexual intercourse by forcible compulsion (see Penal Law § 130.35 [1]; People v Bateman, 212 AD3d 993, 996 [3d Dept 2023], lv denied 39 NY3d 1140 [2023]; People v Casatelli, 204 AD3d 1092, 1096 [3d Dept 2022], lv denied 38 NY3d 1132 [2022]).
As to the weight of the evidence, a different verdict would not have been unreasonable had the factfinder not credited the victim's version of events (see People v Dennis, 221 AD3d 1278, [*5]1280-1281 [3d Dept 2023], lv denied 40 NY3d 1091 [2024]). However, viewing the sum of the evidence presented in a neutral light and deferring to the factfinder's credibility determinations, we are satisfied that the verdict finding defendant guilty of two counts of burglary in the second degree and rape in the first degree is supported by the weight of the evidence (see Penal Law §§ 130.00 [8]; 130.35 [1]; People v Christie, 224 AD3d 1097, 1097-1098 [3d Dept 2024]; People v Kerrick, 206 AD3d 1268, 1269-1270 [3d Dept 2022], lv denied 38 NY3d 1151 [2022]). Although it is undisputed that defendant had not yet been served with the November 2018 order of protection by the dates in question, the record reveals that he was aware of both the October and November 2018 orders at that time, each of which required him to stay aware from the victim's home (see People v Cajigas, 19 NY3d 697, 701 [2012]; People v Jones, 79 AD3d 1244, 1246 [3d Dept 2010], lv denied 16 NY3d 832 [2011]). That defendant intended to commit a crime upon entering the victim's apartment on two separate occasions can be inferred by his violent behavior, culminating in his sexual assault of the victim on one occasion and his later obstruction of her airway upon reentry into the apartment (see Penal Law § 140.25 [1] [b]; People v Smith, 210 AD3d at 1300; People v Cason, 203 AD3d at 1311). As previously discussed, the victim's testimony that defendant had engaged in sexual intercourse with her by use of verbal and physical threats was consistent with her deposition testimony and verbal statement to police, and was further corroborated by photographs and medical testimony of her resulting injuries.
As stated above, defendant's contention that the evidence at trial with respect to the timing of the sexual assault was at variance from the facts alleged in the indictment was not preserved (see People v Gray, 86 NY2d 10, 19 [1995]; People v Davis, 15 AD3d 920, 921 [4th Dept 2005], lv denied 5 NY3d 787 [2005]). We nevertheless note that the People set forth in the indictment their theory that defendant had raped the victim "at, after, or around 11:30 p.m." on December 18, 2018. At trial, the victim testified instead that defendant had attacked her in the early morning hours of December 19, 2018. Given that the timing of the sexual offense is not a material element of rape in the first degree and in light of the minimal discrepancy involved here, we do not find that the People's proof at trial varied from the allegations in the indictment so as to warrant reversal (see Penal Law § 130.35 [1]; CPL 200.50 [6]; People v Owens, 63 NY2d 824, 826 [1984]; People v Cunningham, 48 NY2d 938, 940-941 [1979]; see also People v Kilgore, 168 AD2d 830, 830-831 [3d Dept 1990], lv denied 77 NY2d 962 [1991]; compare People v Bigda, 184 AD2d 993, 993-994 [4th Dept 1992]).
Defendant further argues that his sentence was unduly harsh and severe and improperly based upon information outside the record. We disagree. Contrary [*6]to defendant's contentions, the record amply supports Supreme Court's acknowledgement of the victim's status as a domestic violence victim. Moreover, given defendant's harrowing attack upon the victim, his extensive criminal record, lack of remorse and persistent failure to accept responsibility, we do not find the statutorily permissible sentence imposed to be unduly harsh or severe (see CPL 470.15 [6] [b]).[FN2]
Egan Jr., Fisher, McShan and Powers, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: Upon defendant's motion, County Court (McDermott, J.) dismissed counts 2, 4 and 8 of the indictment, charging him with criminal contempt in the first degree.

Footnote 2: It appears that the postrelease supervision imposed on count 5 was to run consecutive to that imposed on the first count of burglary in the second degree and rape in the first degree, but as those sentences of postrelease supervision merge by operation of law to a total of 25 years postrelease supervision no corrective action is necessary here (see Penal Law § 70.45 [5] [c]; People v Elston, 217 AD3d 1274, 1275 [3d Dept 2023]).